UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph Anthony HERBERT,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

John David HERBERT,
Defendant-Appellant.

Nos. 81–1740, 81–1741.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 14, 1982.

Decided Feb. 7, 1983.

James Hamilton Kemper, Kemper & Henze, Phoenix, Ariz., for Joseph Herbert.

Richard Michael Traynor, Traynor & Herbert, P.C., Chandler, Ariz., for John Herbert.

Susan A. Ehrlich, Phoenix, Ariz., for United States.

Before SKOPIL and FLETCHER, Circuit Judges, and SCHWARTZ,* District Judge.

SKOPIL, Circuit Judge:

John David Herbert and Joseph Anthony Herbert appeal their convictions of conspiracy to violate the firearm laws contrary to 18 U.S.C. § 371, and of possession, making, and transferring of unregistered machine guns in violation of 26 U.S.C. § 5861(d), (e) and (f). We affirm as to John Herbert and reverse as to Joseph Herbert.

I

Appellant John Herbert, an attorney, and John Davis, a gun dealer, delivered five automatic weapons to Robert Jacob, an ATF informant. These weapons had originally been manufactured as semi-automatics, and had been internally converted to be automatic. The automatic character of the weapons was not obvious; the weapons externally appeared to be legal semi-automatics. Several different transactions took place between John Herbert and Jacob, one of which was videotaped. At the videotaped transaction, John Herbert and Davis were present, as well as John's younger brother, appellant Joe Herbert. Joe Herbert had driven Davis to pick up the weapons, had waited at Davis' house while Davis worked on the guns in another room, and carried the guns into Jacob's house. During the meeting at Jacob's house, both appellants were present while the nature of the weapons was discussed. In particular, John Herbert discussed what to do if apprehended with the automatic weapons by police. Joe Herbert hardly spoke during the videotaped transaction, and left early.

John Herbert and Joseph Herbert were indicted on a 17-count indictment alleging conspiracy to violate the firearm laws contrary to 18 U.S.C. § 371; five counts each of making and aiding and abetting the making, possession and transfer of unregistered firearms in violation of 26 U.S.C. § 5681(d), (e) and (f); and one count of

falsification of a federal firearms form in violation of 18 U.S.C. § 922(m).[1]

At trial the government dismissed the count of falsification of a federal firearms form. The trial court granted Joseph Herbert's motion for judgment of acquittal on three counts regarding one of the transferred weapons. The jury found Joseph Herbert not guilty with respect to three counts regarding one automatic weapon, but returned a verdict of guilty on the remaining nine counts regarding three automatic weapons which were transferred during the videotaped transaction. The jury found John Herbert guilty on all 16 counts remaining.

Joseph Herbert was sentenced to two years probation on each count, to run concurrently. John Herbert was sentenced to two years in prison on each count, the sentences to run concurrently.

II

The issues on appeal are:

1. Whether the jury selection plan unconstitutionally excludes Native Americans, and whether the motion to transfer to a different division was properly denied;

2. Whether a comment by the trial court denied John Herbert a fair trial;

3. Whether the trial court's instructions on aiding and abetting and on conspiracy violated the double jeopardy clause;

4. Whether the trial court abused its discretion in denying the motion for a new trial on the basis of newly discovered evidence; and

5. Whether the trial court's instructions that scienter and the factual knowledge of the character of the weapon were not elements of 26 U.S.C. § 5861 were correct statements of the law.

III

The test for determining whether a jury selection process meets the requirements of the fifth and sixth amendment is:

---

* The Honorable Edward J. Schwartz, Senior United States District Judge for the Southern District of California, sitting by designation.

1. Davis had also been named on the indictment, but pleaded guilty prior to trial.

In order to establish a prima facie violation of the fair cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which jury are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the under-representation is due to systematic exclusion of the group in the jury selection process.

*Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979), *quoted in United States v. Berry,* 627 F.2d 193, 196 (9th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981).

■ The test for a constitutionally selected jury is the same, whether challenged under the fifth and sixth amendments of the Constitution or under the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861 *et seq. United States v. Brady,* 579 F.2d 1121, 1133 (9th Cir.1978), *cert. denied,* 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979); *Foster v. Sparks,* 506 F.2d 805, 816–17 (5th Cir.1975); *United States v. Test,* 550 F.2d 577, 584 (10th Cir.1976); *United States v. Smith,* 463 F.Supp. 680, 681–82 (E.D.Wis. 1979).

■ The Jury Selection and Service Act specifically provides for splitting a district into divisions and using only one division's jury wheel for petit juries:

[A]ll litigants in Federal court entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district *or division wherein the court convenes.*

28 U.S.C. § 1861 (emphasis added). A petit jury may be drawn constitutionally from only one division and not the whole district. *Ruthenberg v. United States,* 245 U.S. 480, 38 S.Ct. 168, 62 L.Ed.2d 414 (1918); *United States v. Cates,* 485 F.2d 26, 29 (1st Cir. 1974). *See also United States v. Smith,* 463 F.Supp. at 685.

■ Appellant John Herbert argues that there is a lower percentage of Native Americans in the Phoenix Division than in the Prescott Division, and that the failure to transfer the case to the Prescott Division shows a systematic exclusion of Native Americans. As stated above, it is proper to draw a petit jury from only one division. Appellant made no showing that Native Americans within the single Phoenix Division were systematically excluded. The jury selection plan for the Phoenix Division was therefore constitutional.

■ Appellant John Herbert also argues that his motion for transfer to the Prescott Division should have been granted. The denial of a motion for transfer should be overruled only if the district court abused its discretion. *United States v. Dreitzler,* 577 F.2d 539, 552 (9th Cir.1978), *cert. denied,* 440 U.S. 921, 99 S.Ct. 1246, 59 L.Ed.2d 473 (1979) (motion for change of venue). Fed.R. Crim.P. 18 provides that "[t]he [district] court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice." This was meant to "vest[ ] discretion in the court to fix the place of trial at any place within the district." Fed.R.Crim.P. 18, Advisory Comm. Notes, 1966 Amendment. In this case almost all of the witnesses, the defendants and attorneys lived in the Phoenix area, and the incidents alleged in the indictment occurred within the Phoenix Division. Thus, the district court cannot be said to have abused its discretion in denying the motion for transfer to the Prescott Division.

IV

■ In determining whether a defendant was denied a fair trial by a comment of the court, defendant must show prejudice stemming from the comment. *United States v. Price,* 623 F.2d 587, 593 (9th Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *United States v. Panza,* 612 F.2d 432, 440 (9th Cir.1979), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3019, 65 L.Ed.2d 1118 (1980).

■ While defense counsel was examining appellant John Herbert, an attorney, about his knowledge of the Gun Control

Act, defense counsel asked appellant "how complicated would you say that Act is?" The prosecutor objected, on the grounds that a legal opinion was asked for. The court responded:

> Yes, sustained. You're not implying it's too complicated for a lawyer, are you?

Appellant argues that this comment was a direct inference regarding appellant's veracity and his intent to violate the law, and therefore denied him a fair trial.

Defense counsel had been attempting to show that appellant John Herbert, because of the complexity of the Gun Control Act, did not understand what weapons were in violation of the Act. The court's comment was obviously a jocular aside. Further, the court later instructed the jury that it was not to draw any inference from the court's actions in the case. Though the court's unfortunate comment could be construed to mean that because appellant was a lawyer he should have understood the Act, this slight remark by the court could have had only minimal impact on the jury's decision, and thus could not be said to have prejudiced the defendant's opportunity for a fair trial.

### V

"The Double Jeopardy Clause of the Fifth Amendment protects a defendant in a criminal proceeding against *multiple punishments* or repeated prosecutions for the *same offense*." *United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976) (emphasis added) (footnote omitted); *see United States v. Wilson,* 420 U.S. 332, 343, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975); *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). *See also* Whitebread, *Criminal Procedure* 483 (1980).

■ Appellants claim that the multiple punishments for the conspiracy convictions and the aiding and abetting convictions violated their double jeopardy rights. The offense of conspiracy is separate from an offense of aiding and abetting. While the typical case of aiding and abetting under 18 U.S.C. § 2 involves a "knowing concert of action pursuant to agreement," it is not the only way to aid and abet. *United States v. Valencia,* 492 F.2d 1071, 1073 (9th Cir.1974). Conspiracy requires a prior agreement to commit an offense. Aiding and abetting does not require a prior agreement, but only that the defendant consciously share in a criminal act, regardless of the existence of any agreement. *Pereira v. United States,* 347 U.S. 1, 11–12, 74 S.Ct. 358, 364, 98 L.Ed. 435 (1954). Thus, sentencing for both conspiracy and aiding and abetting would not violate double jeopardy.

### VI

■ A new trial may be granted if required in the interests of justice. Fed.R. Crim.P. 33. For a motion for a new trial to be granted on the basis of newly discovered evidence, the evidence must be, *inter alia,* such as, on a new trial, would probably produce an acquittal, and not be merely cumulative or impeaching. *United States v. Kenny,* 645 F.2d 1323, 1343 (9th Cir.), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981); *United States v. Brashier,* 548 F.2d 1315, 1327 (9th Cir.1976). "The decision to grant or deny a motion for a new trial based on newly discovered evidence falls within the sound discretion of the trial judge." *United States v. Kenny,* 645 F.2d at 1343; *United States v. Krasny,* 607 F.2d 840, 845 (9th Cir.1979), *cert. denied,* 445 U.S. 942, 100 S.Ct. 1337, 63 L.Ed.2d 775 (1980).

■ In support of their motion for a new trial, appellants submitted the affidavit of a witness, unknown at the time of trial, who stated that Jacob (the government informer) had several years earlier personally solicited him to acquire automatic weapons for him, and instructed on how to convert semi-automatic weapons into automatic weapons. This evidence, however, goes only to impeachment of the government's main witness, and is not such that "on a new trial would probably produce an acquittal." Therefore the district court did not abuse its discretion in denying the motion for new trial on the basis of this newly discovered evidence.

## VII

The district court instructed that the essential elements of the crime of illegal possession [or transfer] of an unregistered weapon are (1) knowing possession [or transfer] of a machine gun and (2) that such machine gun was unregistered. The trial court then instructed (to which appellants objected) that:

The mere possession, transfer or making of a firearm which is required to be registered and has not been is a violation of the laws of the United States. It is not necessary for the government to prove that the defendant knew that the weapon was a firearm within the meaning of the statute or that he knew that registration was required. It is sufficient if you find beyond reasonable doubt that he knowingly possessed, transferred and/or made it.

█ Appellants argue that this instruction is erroneous, in that a person can be convicted without any knowledge of the true nature of the weapon, *i.e.*, without knowledge that a perfectly legal weapon had been converted to be automatic. We will reverse in this case only if there is error and if there is a reasonable possibility that error materially affected the verdict. *United States v. Valle-Valdez,* 554 F.2d 911, 916 (9th Cir.1977).

█ To be guilty of possession and transfer of an unregistered firearm pursuant to 26 U.S.C. § 5861(d) and (e), there is no requirement that the defendant be shown to have a specific intent to commit the crime. *United States v. Thomas,* 531 F.2d 419, 421 (9th Cir.), *cert. denied,* 425 U.S. 996, 96 S.Ct. 2210, 48 L.Ed.2d 821 (1976). The government does not need to prove that the defendant knew the possession or transfer was against the law, or that the weapons in question were required to be registered. *United States v. Freed,* 401 U.S. 601, 607, 91 S.Ct. 1112, 1117, 28 L.Ed.2d 356 (1971). The defendant also does not need to know all the characteristics of the weapon which subject it to regulation. "It is enough to prove he knows that he is dealing with a dangerous device of such type as would alert one to the likelihood of regulation." *United States v. De Bartolo,* 482 F.2d 312, 316 (1st Cir.1973), *quoted in Thomas,* 531 F.2d at 421–22.

The cases in this circuit that have approved this kind of instruction have dealt with weapons that by their very nature would have alerted the defendant that they "approached the area of regulation." *See United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (hand grenades); *Thomas,* 531 F.2d 419 (short barrel rifle); *De Bartolo,* 482 F.2d 312 (sawed-off shotgun); *Sipes v. United States,* 321 F.2d 174 (8th Cir.), *cert. denied,* 375 U.S. 913, 84 S.Ct. 208, 11 L.Ed.2d 150 (1963) (short barrel rifle, externally modified).

The Supreme Court, in discussing the scienter requirement in a similar statutory scheme, stated that

Pencils, dental floss, paper clips may also be regulated. But they may be the type of products which might raise substantial due process questions if Congress did not require ... "*mens rea*" as to each ingredient of the offense.

*United States v. International Minerals & Chemical Corp.,* 402 U.S. 558, 564–65, 91 S.Ct. 1697, 1701–02, 29 L.Ed.2d 178 (1971), *quoted in Thomas,* 531 F.2d at 421.

█ In this case, the firearms involved were weapons that had been only internally modified, and from the exterior looked like perfectly legal semi-automatic pistols. No markings had been interfered with and no external modifications had been made. Legal firearms are quite prevalent in today's society. While a sawed-off shotgun or a short barrel rifle, *De Bartolo,* 482 F.2d at 416; *Thomas,* 531 F.2d at 421–22, may be a dangerous device of such type as would alert one to the likelihood of regulation, we do not find that an ordinary firearm that is internally and undetectably modified to be automatic yet legal in appearance and markings falls within this category. If the law was as stated in this instruction, then any person who possessed an internally modified weapon with absolutely no knowledge or method of verification of the modi-

fication would be in violation of the law. We are sure Congress did not intend that this statute be so draconian. Accordingly, we hold that, in a situation in which there were no external indications on the weapon that would "alert one to the likelihood of regulation," the district court's instruction was erroneous.

■ With respect to John Herbert, however, the error is harmless and reversal is not required. John Herbert's defenses were that he never possessed the weapons and that he was entrapped. There was overwhelming evidence that John Herbert knew that the weapons were automatic. In light of this overwhelming evidence, there is no "reasonable possibility that the error materially affected the verdict." *Valle-Valdez,* 554 F.2d at 915.

■ With respect to Joseph Herbert, however, in light of the lack of evidence regarding his knowledge of the actual nature of the weapons, the error in the instruction was not harmless. While the evidence was undisputed that Joe Herbert drove Davis and the firearms to Jacob's house, the only evidence that could show that Joe knew of the illegal character of the weapons was in the videotape of the meeting in Jacob's house. The videotape shows only that Joe was present while the men discussed the automatic nature of the weapons and possible defenses to tell law enforcement officials if caught, and that Joe did not actively participate in these discussions. Mere presence while a crime is being committed is insufficient to infer criminal knowledge or intent. *United States v. Sutherland,* 463 F.2d 641, 648 (5th Cir.), *cert. denied,* 409 U.S. 1078, 93 S.Ct. 698, 34 L.Ed.2d 668 (1972). In light of the paucity of evidence that Joe Herbert knew the factual character of the weapons, the error in the instruction cannot be held harmless. Accordingly, we reverse the convictions of Joseph Herbert.

### CONCLUSION

The convictions of John Herbert are AFFIRMED. The convictions of Joseph Herbert are REVERSED.