**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael J. O'MARA, Defendant–
Appellant.**

**No. 90–50632.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 2, 1991.

Decided May 8, 1992.

Marcia J. Brewer, Los Angeles, Cal., for defendant-appellant.

Steven M. Bauer, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before SCHROEDER and KOZINSKI, Circuit Judges, and HOGAN,* District Judge.

SCHROEDER, Circuit Judge:

Michael J. O'Mara appeals from his conviction after jury trial for possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). The weapon in question was a Sten machinegun built and designed to fire in either fully automatic or semi-automatic mode by manipulation of a visible, external selection switch. It is not disputed that the weapon was in fact a machinegun which is defined in 26 U.S.C. § 5845(b) to include all weapons designed to be fired automatically. It was, therefore, a firearm subject to regulation. *See* 26 U.S.C. § 5845(a)(6) (defining "firearm" to include machineguns). The gun was seized as the result of a search by national park rangers. Appellant challenges the search, and also challenges the court's instruction to the jury as to the elements of the crime charged. Appellant contends that the district court should have instructed the jury that it was the government's burden to prove not only that the appellant knew that he possessed the weapon, but also that he knew that the weapon was a dangerous device of the type which might be regulated. We hold that the district court did not err in instructing the jury or in admitting the challenged evidence. We therefore affirm the district court.

---

* Honorable Michael R. Hogan, United States District Judge for the District of Oregon, sitting by designation.

## The Dangerous Weapon Instruction

■ Appellant maintains that the district court in this case erred in instructing that "the government must prove that the defendant knew that he possessed a weapon which would fire bullets, whether or not he knew that the weapon would fire in the automatic mode." The defense in this case was based on the assertion that O'Mara believed the weapon to be a semi-automatic replica of a Sten and testified that he was unable to operate the weapon in an automatic mode. He asks us to reverse because the district court refused to give the instruction he wished that contained the following language: "The government must prove that the defendant knew that he possessed a dangerous device and that the device was the type which might be regulated."

The instruction appellant sought would have added an element of partial scienter to a crime which has historically been treated as one in which the government need not prove any specific intent. For example, we held in *United States v. Thomas*, 531 F.2d 419 (9th Cir.), *cert. denied*, 425 U.S. 996, 96 S.Ct. 2210, 48 L.Ed.2d 821 (1976), that the trial court did not err in instructing as follows:

> There is no requirement that the defendant be shown to have a specific intent to commit the crime. The Government does not need to show that the defendant ... knew that the firearm was not registered or that he knew he was required to register it. The only knowledge which the Government needs to prove is that the firearm was in his possession.

*Id.* at 421. In *Thomas* we rejected a defense of mistake of fact where the defendant possessed an operable rifle as defined in 26 U.S.C. § 5845(c) but claimed that he mistakenly believed the weapon was an antique firearm. 26 U.S.C. § 5845(g) provides an explicit exemption for firearms of a certain age and design. The weapon in *Thomas* did not meet the clear requirements for exemption as an antique firearm. 531 F.2d at 420.

The language desired by the appellant is drawn from our holding in *United States v. Herbert*, 698 F.2d 981 (9th Cir.), *cert. denied*, 464 U.S. 821, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983). In *Herbert*, the instruction originally given by the district court was essentially the same instruction given in *Thomas*. The defense in *Herbert*, however, was materially different from that in *Thomas*. In *Herbert*, the defendant possessed a weapon originally designed not to fire as an automatic, and hence, the weapon as originally designed, was not required to be registered. It had been internally modified, however, to fire in the automatic mode. From external appearance, the weapon looked like an ordinary firearm not subject to regulation. The defendant in *Herbert* wished to argue that he had no knowledge that it had been modified and therefore would not have been on notice that he had violated the law. We pointed out in *Herbert* that although there were cases in the circuit, like *Thomas*, that had approved the type of instruction the district court gave in *Herbert*, those were all cases in which the weapons appeared to be just what they were—weapons that were subject to regulation—and therefore, by their very nature, would put a reasonable person on notice of the possibility of regulation. 698 F.2d at 986. We held in *Herbert* that, in the particular circumstances of that case, it was error for the district court to instruct the jury that the mere possession of a firearm that is required to be registered is a violation of law. 698 F.2d at 986–87. We said in *Herbert* that where "there were no external indications on the weapon that indicate it is subject to regulation," the district court must expressly instruct the jury that the government must prove the defendant "knows that he is dealing with a dangerous device of such type as would alert one to the likelihood of regulation." 698 F.2d at 986 (quoting *United States v. DeBartolo*, 482 F.2d 312, 316 (1st Cir.1973)). That or similar language in the circumstances of the *Herbert* case would permit the defendant to argue to the jury that he did not know about the internal modifications. No similar defense of deception exists in this case.

The appellant's reliance on *Herbert* is therefore misplaced, for the weapon had no internal modifications and was from its external appearances subject to regulation. The district court in this case therefore did not err in instructing the jury that the defendant need not have actual knowledge that the weapon was an automatic weapon.

Appellant's reliance on *United States v. Kindred*, 931 F.2d 609 (9th Cir.1991), is also misplaced. In *Kindred*, the weapon in question was not only old, as was the weapon in *Thomas*, but was missing parts and could not function. We held that the district court erred in instructing that the government need only prove that the defendant knew that the object was a "gun." We reasoned that such an instruction was appropriate where the object was a weapon that was obviously dangerous, but was insufficient where the object was obviously not dangerous. We held that the defendant therefore should have been given the opportunity to argue to a properly instructed jury that he did not know that the device was "of such a dangerous type as to be subject to regulation." Here, by contrast, there is no contention that the weapon was not in fact dangerous, only that the defendant mistakenly believed the weapon was not an automatic, despite the visible, external selection switch designed to permit firing in both semi-automatic and automatic modes. The appellant here, as in *Thomas*, was not entitled to defend on the ground that he was mistaken about the true nature of the weapon.

■ The concurrence suggests that section 5861(d), as interpreted by this circuit, requires no proof that a defendant knew of those characteristics of the weapon subjecting it to the federal registration requirement. Concurring Opinion at page 1292. This suggestion may be somewhat misleading. Under the cases of this circuit, there is strict liability under the statute when the firearm in question, by its very nature or appearance, alerts its owner of the likelihood of regulation. Our cases recognize an exception where the nature of the weapon is not evident. The concurrence cites *United States v. Anderson*, 885 F.2d 1248 (5th Cir.1989) (en banc), with approval. *Anderson* comments on the harsh injustice of finding guilt where, unknown to a gun owner and despite a genuine and reasonable belief to the contrary, a semi-automatic pistol turns out to have been secretly "modified to be fully automatic." 885 F.2d at 1254. In such a case, however, as the foregoing discussion of *Herbert* and *Kindred* explains, the law of this circuit, too, would require proof by the government that the defendant actually knew of the characteristics of the weapon which subject it to regulation.

In sum, this court has in *Herbert* and *Kindred* created narrow exceptions to the general rule that where the government proves that a defendant is in possession of a gun requiring registration, it need not prove that the defendant knew of the specific properties of the weapon that subject it to registration. The exception in *Herbert* was for a weapon that was subject to registration only by virtue of internal modification. In *Kindred*, it was for a weapon that did not appear to be dangerous. In this case, where the defendant knowingly possessed a weapon, and that weapon bore all the external indicia subjecting it to regulation, the defendant is not entitled to defend on the grounds that he lacked knowledge of the specific characteristics that triggered the registration requirement.

*The Search*

■ The appellant's challenge to the legality of the search which produced the weapon does not merit lengthy discussion. The park rangers, having received reports of illegal firearms discharges in the Joshua Tree National Monument, began stopping all outgoing cars along the only exit route from the campground area where the discharges were reported. Their purpose was to question exiting visitors briefly. Witnesses had furnished descriptions of suspects and the park rangers were also looking for persons fitting these descriptions.

Appellant was stopped and the park ranger immediately noticed that he and his passenger matched the descriptions wit-

nesses had given. The ranger asked the occupants how they were doing, if they had been in the area long, and whether they had heard any gun shots. At this point the ranger noticed details of the appearance of the occupants of the car which further matched the description of the suspects. He therefore asked them to wait, walked to his own truck and radioed for backup. The subsequent search of the vehicle resulted in the seizure of several weapons, including the Sten machinegun.

Appellant contends that the initial stop had to be supported by particularized suspicion and that the evidence seized should, therefore, have been excluded. Our decision, however, is controlled by the Supreme Court's decision in *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). The Court there, after weighing public interest, the degree of intrusion, and the likely effectiveness of the stops, held that roadblock sobriety checks do not violate the fourth amendment. The public interest in apprehending persons who randomly shoot dangerous weapons in a public campground is as weighty as the interest involved in *Sitz*. The intrusion is no greater. The degree to which the stop could be expected to further the public interest in this case was higher than that of the sobriety checkpoints in *Sitz*, since the officers in this case had good reason to believe that one of the cars exiting the park had occupants which had committed a crime.

AFFIRMED.

KOZINSKI, Circuit Judge, concurring.

Federal law requires some, but not all, firearms to be registered. Six circuits, including ours, hold that conviction of a defendant for possessing an unregistered firearm does not require the government to prove that the defendant knew of the characteristics of the weapon that brought it within the registration requirement. *See United States v. Thomas*, 531 F.2d 419, 421–22 (9th Cir.), *cert. denied*, 425 U.S.

996, 96 S.Ct. 2210, 48 L.Ed.2d 821 (1976); *see also United States v. Ross*, 917 F.2d 997, 999–1001 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1078, 112 L.Ed.2d 1183 (1991); *United States v. Mittleider*, 835 F.2d 769, 774 (10th Cir.1987), *cert. denied*, 485 U.S. 980, 108 S.Ct. 1279, 99 L.Ed.2d 490 (1988); *United States v. Shilling*, 826 F.2d 1365, 1367–68 (4th Cir. 1987), *cert. denied*, 484 U.S. 1043, 108 S.Ct. 777, 98 L.Ed.2d 863 (1988); *United States v. Gonzalez*, 719 F.2d 1516, 1522 (11th Cir. 1983), *cert. denied*, 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 710 (1984); *Morgan v. United States*, 564 F.2d 803, 805–06 (8th Cir.1977). Three circuits hold that it does. *See United States v. Harris*, 959 F.2d 246, 259–261 (D.C.Cir.1992); *United States v. Anderson*, 885 F.2d 1248, 1250–55 (5th Cir. 1989) (en banc); *United States v. Williams*, 872 F.2d 773, 774–77 (6th Cir. 1989); *see also Thomas*, 531 F.2d at 422–24 (Hufstedler, J., dissenting).

My colleagues reach the correct result under the law of our circuit, but I believe the governing circuit law is in error. I would hold that conviction under 26 U.S.C. § 5861(d) requires proof that the defendant knew of those characteristics of the weapon which subjected it to the federal registration requirement.[1]

### Discussion

Section 5861 of Title 26 states: "It shall be unlawful for any person ... (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." Section 5845 defines firearm to include automatic weapons (i.e., machine guns), but not semi-automatic weapons: It's a crime to possess an unregistered automatic weapon, but it's not a crime to possess an unregistered semi-automatic weapon. It's also a crime to possess, among other things, an unregistered shotgun with a barrel less than 18 inches, an unregistered rifle with a barrel less than 16 inches, a silencer, or a

---

1. This does not mean that the government must prove that the defendant knew of every last characteristic of the weapon, only of the specific characteristic that required the weapon to be registered. Here, that means the defendant's knowledge that the weapon was an automatic, as opposed to a semi-automatic. *See Anderson*, 885 F.2d at 1254; *Williams*, 872 F.2d at 777.

destructive device such as a bomb. *See* 26 U.S.C. § 5845. The maximum penalty for a violation of this statute is ten years' imprisonment and a $10,000 fine. 26 U.S.C. § 5871. O'Mara received a sentence of twenty-one months' imprisonment for possessing an unregistered automatic weapon.

A criminal statute is of the strict liability variety if it does not require that the defendant know, or be aware of, the facts constituting the crime; under such statutes, ignorance or mistake of fact does not relieve the defendant of criminal liability. Even if not all elements of a crime provide for strict liability, certain elements may. *See United States v. Freed,* 401 U.S. 601, 613, 91 S.Ct. 1112, 1120, 28 L.Ed.2d 356 (1971) (Brennan, J., concurring) (*"mens rea* is not a unitary concept, but may vary as to each element of a crime").

Suppose a person walks out of a restaurant with someone else's umbrella mistakenly believing it to be his own. If the crime of theft requires that the defendant know the property belongs to another, the defendant has a valid defense—if the jury believes his story. But suppose theft does not require that the defendant know the property belongs to another—in other words, that liability is strict as to that element of the crime. If such be the case, the defendant is guilty of theft, regardless of what he thought or knew.

Because, as in my example, strict liability can produce harsh results, it is disfavored in the criminal law. "Traditional notions of punishment require consciousness of the acts being done." *Ross,* 917 F.2d at 1000. As one commentator has noted:

> The consensus can be summarily stated: to punish conduct without reference to the actor's state of mind is both inefficacious and unjust. It is inefficacious because conduct unaccompanied by an awareness of the factors making it criminal does not mark the actor as one who needs to be subjected to punishment in order to deter him or others from behaving similarly in the future, nor does it single him out as a socially dangerous individual who needs to be incapacitated

or reformed. It is unjust because the actor is subjected to the stigma of a criminal conviction without being morally blameworthy.

Packer, *Mens Rea and the Supreme Court,* 1962 Sup.Ct.Rev. 107, 109.

On the other hand, the criminal law does not generally require that the prosecution prove that the defendant knew of the *law* rendering his acts criminal. *See* Model Penal Code § 2.02(9) (Official Draft 1962). Thus the familiar maxims: Ignorance or mistake of the law is no defense; ignorance or mistake of fact is. These are not constitutional requirements; they merely reflect the usual legislative practice—and are therefore subject to legislative variation. The legislature can, for example, make knowledge of the law an element of the offense; under such statutes, ignorance or mistake of the law *is* a defense. *See Cheek v. United States,* — U.S. —, 111 S.Ct. 604, 609–10, 112 L.Ed.2d 617 (1991) (requiring government to prove defendant's knowledge of law to obtain criminal tax conviction). Similarly, the legislature can enact a law where the defendant's knowledge of the facts constituting the crime is not an element of the offense; under such statutes, mistake or ignorance of fact is *not* a defense. The standard example of this is statutory rape, which generally does not require the prosecution to prove that the defendant had knowledge of the partner's age.

The question we face here is how to interpret criminal statutes, such as 26 U.S.C. § 5861(d), which are silent about mens rea. The usual method of statutory interpretation would require that we follow the text of the statute. *See West Virginia Univ. Hospitals, Inc. v. Casey,* — U.S. —, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68 (1991). We would thus hold that there is strict liability as to all of the elements of 26 U.S.C. § 5861(d). However, in light of the historical and commonsensical opposition to strict liability crimes, the Supreme Court has rejected this approach.

In *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), the government argued that federal criminal

statutes are to be read literally, and that where they do not explicitly contain a mens rea requirement, there is none. The Court held otherwise: "[S]uch adoption of the literal reasoning announced in those cases would ... sweep out of all federal crimes, except when expressly preserved, the ancient requirement of a culpable state of mind. We think a resume of their historical background is convincing that an effect has been ascribed to them more comprehensive than was contemplated and one inconsistent with our philosophy of criminal law." *Id.* at 250, 72 S.Ct. at 243.

The Court again confronted the issue in *United States v. United States Gypsum Co.*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978), where it considered criminal liability under the Sherman Antitrust Act. Although the text of the Sherman Act contains no mens rea requirement, the Court was "unwilling to construe the Sherman Act as mandating a regime of strict-liability criminal offenses." *Id.* at 436, 98 S.Ct. at 2873. The Court noted "the familiar proposition that '[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo–American criminal jurisprudence.'" *Id.* (quoting *Dennis v. United States*, 341 U.S. 494, 500, 71 S.Ct.

857, 862, 95 L.Ed. 1137 (1951)). Because of this general presumption and the rule that ambiguous criminal statutes are to be construed with lenity, *see Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971); *see also United States v. Yermian*, 468 U.S. 63, 77, 104 S.Ct. 2936, 2943, 82 L.Ed.2d 53 (1984) (Rehnquist, J., dissenting), the Court noted that it had "on a number of occasions read a state-of-mind component into an offense *even when the statutory definition did not in terms so provide.*" *United States Gypsum*, 438 U.S. at 437, 98 S.Ct. at 2873 (emphasis added). In fact, the Court read *Morissette* "as establishing, at least with regard to crimes having their origin in the common law, an interpretative presumption that *mens rea* is required." *Id.* at 437, 98 S.Ct. at 2873.[2]

*Morissette* and *United States Gypsum* create a clear rule of statutory interpretation: Courts are to interpret a federal criminal statute, or an element of a federal crime, to contain a mens rea requirement unless the structure or language of the statutory text (or, perhaps, the legislative history[3]) reveals a contrary congressional

2. The decision in *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), is similar. *Liparota* involved 7 U.S.C. § 2024(b)(1), which provides that "whoever knowingly uses, transfers, acquires, alters, or possesses [food stamps] in any manner not authorized by this chapter or the regulations issued pursuant to this chapter" is guilty of a criminal offense. Addressing the question whether a defendant needs to know that his use of food stamps was unauthorized, the Court concluded: "Absent indication of contrary purpose in the language or legislative history of the statute, we believe that § 2024(b)(1) requires a showing that the defendant *knew* his conduct to be unauthorized by statute or regulations." 471 U.S. at 425, 105 S.Ct. at 2088 (emphasis added); *cf. United States v. Balint*, 258 U.S. 250, 253, 42 S.Ct. 301, 302, 66 L.Ed. 604 (1922) (interpreting mens rea requirement for conviction under the Narcotic Act: "The question before us, therefore, is one of the construction of the statute and of inference of the intent of Congress.").

3. If the legislative history shows that omission of a mens rea requirement was "quite clearly deliberate," *United States v. United States Dist. Ct. (Kantor)*, 858 F.2d 534, 538 (9th Cir.1988),

the courts have relied on that history to interpret textual silence as imposing strict liability. For example, in *Yermian*, the Court held that the government need not prove the defendant's knowledge of the federal status of an agent to whom a false statement is made. The relevant legislative history suggested that Congress in fact intended strict liability as to that element of the crime. 468 U.S. at 70–74, 104 S.Ct. at 2940–42.

Given the disfavor into which legislative history has justly fallen, it is questionable whether reliance on legislative history in this context is still appropriate. *See West Virginia Univ. Hospitals*, 111 S.Ct. at 1147; *see also United States v. R.L.C.*, — U.S. —, — – —, 112 S.Ct. 1329, 1340–41, 117 L.Ed.2d 559 (1992) (Scalia, J., concurring). In any event, section 5861's legislative history tells us nothing about whether Congress intended a mens rea requirement as to the characteristics of the weapon subjecting it to the registration requirement. *See Freed*, 401 U.S. at 614, 91 S.Ct. at 1120 (Brennan, J., concurring) ("the legislative history of the amendments to the National Firearms Act is silent on the level of intent to be proved in connection with each element of the offense"); *Anderson*, 885 F.2d at 1254 n. 9.

intent.[4]

The only exception to this rule occurs with a "public welfare offense" (i.e., a crime that is not a common law crime) which has a small penalty attached. The Court articulated the exception in *Morissette*, noting that the public welfare offenses for which it had interpreted silence not to require any mens rea are those where "penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation." 342 U.S. at 256, 72 S.Ct. at 246. In interpreting the Sherman Act to contain a mens rea requirement, the *United States Gypsum* Court found an important factor to be the penalty attached to Sherman Act criminal violations: a potential fine of $100,000 and imprisonment of three years. "The severity of these sanctions provides further support for our conclusion that the Sherman Act should not be construed as creating strict-liability crimes." 438 U.S. at 442 n. 18, 98 S.Ct. at 2876 n. 18.[5] Similarly, the two cases where the Court interpreted silence to allow strict and vicarious liability involved misdemeanors. *United States v. Park*, 421 U.S. 658, 666 n. 10, 95 S.Ct. 1903, 1908 n. 10, 44 L.Ed.2d 489 (1975); *United States v. Dotterweich*, 320 U.S. 277, 281, 64 S.Ct. 134, 136, 88 L.Ed. 48 (1943).

As I see it, this is the only situation where the Supreme Court has presumed that congressional silence means that Congress intended not to require proof of any mens rea. Here, while it's true the offense is a public welfare offense, *see Freed*, 401 U.S. at 609, 91 S.Ct. at 1118, there is a potentially large penalty attached: The maximum penalty for possession of an unregistered firearm is ten years; Mr. O'Mara was sentenced to twenty-one months. If O'Mara's claimed defense—that he thought the weapon was a semi-automatic—is true, this is an extraordinarily harsh penalty. After all, in *United States Gypsum*, where the maximum penalty was three years and a fine of $100,000, the severity of the penalty was a strong consideration in the Supreme Court's holding that it would not construe the Sherman Act as a strict liability crime. 438 U.S. at 442 n. 18, 98 S.Ct. at 2876 n. 18. In light of this, I think the Fifth Circuit, sitting en banc, hit the nail on the head:

> It is unthinkable to us that Congress intended to subject ... law-abiding, well-intentioned citizens to a possible ten-year term of imprisonment if—unknown to them, and without reasonable cause on their part to think otherwise—what they genuinely and reasonably believed was a conventional semi-automatic pistol turns out to have worn down into or been secretly modified to be a fully automatic weapon....

> We think it far too severe for our community to bear—and plainly not intended by Congress—to subject to ten years' imprisonment one who possesses what appears to be, and what he innocently and reasonably believes to be, a wholly ordinary and legal pistol merely because it has been, unknown to him, modified to be fully automatic. Certain-

**4.** In *Freed,* the Court held that the government need not prove that the defendant knew the weapon was unregistered to convict a person for possession of an unregistered firearm. 401 U.S. at 609–10, 91 S.Ct. at 1118–19. The Court compared the statute after congressional amendment to the case law interpreting the statute as previously written to divine Congress' intent as to the mens rea for that element. *See id.* at 607, 91 S.Ct. at 1117; *id.* at 616, 91 S.Ct. at 1121 (Brennan, J., concurring).

It's important to note that *Freed* did not address the mens rea requirement for the element of the crime at issue here: knowledge of the characteristics of the firearm that subject it to the registration requirement. *See id.* at 612, 91 S.Ct. at 1120 (Brennan, J., concurring) ("The Government and the Court agree that the prosecutor must prove knowing possession of the items and also knowledge that the items possessed were hand grenades. Thus, while the Court does hold that no intent at all need be proved in regard to one element of the offense—the unregistered status of the grenades—knowledge must still be proved as to the other two elements.").

**5.** The Court also cited a law review article for the proposition that "strict liability [is] generally inappropriate when [an] offense [is] punishable by imprisonment." *United States Gypsum,* 438 U.S. at 442–43 n. 18, 98 S.Ct. at 2876 n. 18 (citing Sayre, *Public Welfare Offenses,* 33 Colum.L.Rev. 55, 72 (1933)).

ly we have not done this for other of-fenses.

*Anderson,* 885 F.2d at 1254 (footnote omitted).

### Conclusion

Based on my analysis of cases where the Supreme Court has read congressional silence on mens rea to mean strict liability, I cannot understand why so many courts have interpreted 26 U.S.C. § 5861(d) not to require proof that a defendant knew of those characteristics of the weapon subjecting it to the federal registration requirement. But whatever the cause, the time may be near when we must revisit section 5861(d) and interpret it to require that the government prove the defendant knew of the characteristics of the weapon requiring federal registration.