972 F.2d 1345
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
William A. HARVEY, Defendant-Appellant.
 No. 91-30320.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 6, 1992.
Decided Aug. 7, 1992.
 
 Before ALARCON, RYMER and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 William Harvey ("Harvey") appeals from his conviction and sentence following a jury trial for possession of an unregistered machine gun in violation of 26 U.S.C. § 5861(d). Harvey seeks reversal on six grounds:
 
 
 3
 One. The district court failed to instruct the jury that knowledge of the weapon's automatic firing capability was a necessary element of a violation of 26 U.S.C. § 5861(d).
 
 
 4
 Two. The district court failed to instruct the jury that the effective date of 18 U.S.C. § 922(o) was May 19, 1986, and that all of the parts of the machine gun must have been transferred to Harvey after that date.
 
 
 5
 Three. The Government failed to prove that Harvey acquired a machine gun before the effective date of 18 U.S.C. § 922(o).
 
 
 6
 Four. The principal Government witness, Seth Lukens, committed perjury.
 
 
 7
 Five. The district court improperly denied Harvey a downward adjustment in his sentence pursuant to § 2K2.1(b)(1) because Harvey possessed the weapon solely for sporting or recreational purposes.
 
 
 8
 Six. The warrant obtained to search Harvey's residence was not supported by probable cause.
 
 
 9
 We disagree and affirm.
 
 I.
 
 10
 Harvey contends that his conviction must be reversed because the district court failed to instruct the jury that knowledge of a weapon's automatic capability is a necessary element of a violation of 26 U.S.C. § 5861(d). There is a split in the law of this circuit regarding whether a district court's refusal of a proposed jury instruction is reviewed under an abuse-of-discretion standard or de novo. United States v. Ayers, 924 F.2d 1468, 1475 (9th Cir.1991); United States v. Whitehead, 896 F.2d 432, 434 (9th Cir.), cert. denied, 111 S.Ct. 342 (1990). This conflict can only be resolved in an en banc proceeding. United States v. Slaughter, 891 F.2d 691, 699 (9th Cir.1989). En banc review is not necessary in this matter, however, because the result would be the same under either standard. The district court's jury instructions accurately set forth the scienter elements of a section 5861 violation as required by this court's decisions in United States v. Herbert, 698 F.2d 981 (9th Cir.1983), cert. denied, 464 U.S. 821 (1983), and United States v. Kindred, 931 F.2d 609 (9th Cir.1991).
 
 
 11
 In order to convict a defendant of possession of an unregistered machine gun, the Government must establish three factual elements: (1) the defendant possessed a certain item, (2) the item was a machine gun, and (3) the machine gun was not registered. Kindred, 931 F.2d at 611 (citing United States v. Freed, 401 U.S. 601, 612 (1971) (Brennan, J., concurring)). In addition to these factual elements, the Government must also show "that the defendant knew that he possessed 'a dangerous device of such type as would alert one to the likelihood of regulation.' " Kindred, 931 F.2d at 612 (quoting United States v. Thomas, 531 F.2d 419, 421 (9th Cir.), cert. denied, 425 U.S. 996 (1976)).
 
 
 12
 Harvey was found in possession of a Colt AR-15 assault rifle. As manufactured, an AR-15 is a semiautomatic weapon. An M-16 is the military version of an AR-15. An M-16 is an automatic weapon. Harvey's AR-15 contained five parts from an M-16. These parts were placed in the interior of Harvey's AR-15. As converted, Harvey's AR-15 was capable of automatic fire. Harvey did not register the weapon as a machine gun.
 
 
 13
 In Herbert, we held that where a semiautomatic weapon has been altered internally so that an external examination would not indicate that it is capable of being fired automatically, the jury must be instructed that the Government must prove that the defendant " 'knows that he is dealing with a dangerous device of such type as would alert one to the likelihood of regulation.' " 698 F.2d at 986 (quoting United States v. De Bartolo, 482 F.2d 312, 316 (1st Cir 1973)).
 
 
 14
 In Kindred, we applied the rule adopted in Herbert to an inoperable World War I type German machine gun. We reversed because the district court had instructed the jury that the Government need only prove the object was a gun. 931 F.2d at 612. We stated the applicable rule as follows:
 
 
 15
 To secure a conviction under the act, the government must prove that the defendant knew that he possessed a dangerous device of a type that would alert one to the likelihood of regulation.
 
 
 16
 Id.
 
 
 17
 In the instant matter, the district court instructed the jury as follows:
 
 
 18
 No. 11. An act is done knowingly if done voluntarily and intentionally and not because of mistake or accident or other innocent reason.
 
 
 19
 Specific intent is not an element of the crime of possession of an unregistered firearm. While it is necessary for the defendant to knowingly do the act, it is not necessary, however, to prove the defendant knew he was violating the law.
 
 
 20
 In regard to the charge in the indictment, the mere possession of a firearm which is required to be registered but has not been so registered is a violation of the laws of the United States. It is not necessary for the Government to prove that the defendant knew that the weapon in his possession was a firearm as defined earlier within the meaning of the statute or that he knew that registration was required. It is sufficient if you find beyond reasonable doubt that he knowingly possessed it.
 
 
 21
 The defendant also does not need to know all the characteristics of the weapon which subject it to regulation. It is enough to prove he knows that he is dealing with a dangerous device of such type as would alert one to the likelihood of regulation.
 
 
 22
 RT 479-80 (emphasis added). " 'A trial judge is given substantial latitude in tailoring the instructions so long as they fairly and adequately cover the issues presented.' " Ayers, 924 F.2d at 1475 (quoting United States v. Cruz, 783 F.2d 1470, 1472 (9th Cir.), cert. denied, 476 U.S. 1174 (1986)); see also United States v. Echeverry, 759 F.2d 1451, 1455 (9th Cir.1985) ("So long as the instructions fairly and adequately cover the issues presented, the judge's formulation of those instructions or choice of language is a matter of discretion.") The district court's instruction that the Government had to prove Harvey had knowledge that the weapon was of a type subject to regulation faithfully followed the words used in this court's explanation in Herbert and Kindred regarding the mental state which must be shown to sustain a conviction for possession of an unregistered machine gun that has been altered internally. Therefore, the district court's instruction was not erroneous.
 
 II.
 
 23
 Harvey contends that the district court erred in failing to instruct the jury that he could not be convicted under section 5861(d) unless the Government proved that he acquired all of the parts of the machine gun after the effective date of 18 U.S.C. 922(o)(2)(b), i.e., May 19, 1986. Harvey also contends that the Government's failure to prove he acquired all the parts prior to May 19, 1986, constitutes an ex post facto law.
 
 
 24
 To support this argument, Harvey relies upon the following portion of the Firearm Owners Protection Act of 1986, codified in 18 U.S.C. § 922:
 
 
 25
 (1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machine gun.
 
 
 26
 (2) This subsection does not apply with respect to--
 
 
 27
 .............................................................
 
 
 28
 ...................
 
 
 29
 * * *
 
 
 30
 (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect [i.e., May 19, 1986].
 
 
 31
 18 U.S.C. § 922(o). Harvey then discusses another portion of the Firearm Owners Protection Act that amends the definition of machinegun contained in 26 U.S.C. § 5845. Harvey points out that prior to the passage of the Firearm Owners Protection Act, the definition of a machinegun included any automatic weapon, as well as:
 
 
 32
 any combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.
 
 
 33
 Under the amended version of section 5845(b) effective May 19, 1986, any single part designed or intended exclusively to convert a weapon to automatic fire also constitutes a machinegun:
 
 
 34
 The term ["machinegun"] shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.
 
 
 35
 Pub.L. No. 99-308, 100 Stat. 449 (1986) (emphasis added).
 
 
 36
 Perhaps because the amendment to the definition of machine gun contained in section 5485 was passed as part of the same act as 18 U.S.C. 922(o), Harvey assumes that the grandparent clause applicable to section 922(o) should also apply to the amendment of section 5485. Thus, Harvey argues that if he possessed "any part" of the machine gun prior to May 19, 1986, that part was not subject to registration in 1989 and cannot be used to support his conviction. Harvey concludes by stating that the Government failed to prove he acquired the M-16 parts used to convert his semiautomatic after May 19, 1986.
 
 
 37
 There are several flaws in Harvey's argument. First, the grandparent clause contained in section 922(o) does not apply to section 5485. The language of section 922(o)(2) expressly limits the applicability of the grandparent clause to "subsection" (o) of section 922. Second, the M-16 parts placed in Harvey's weapon are not "any part," but rather, a combination of five parts including a bolt carrier, a hammer, a trigger, a selector and a disconnect. Possession of a combination of parts was prohibited prior to the 1986 amendment which added the "any part" language to the definition of machine gun. Finally, section 922 does not exempt individuals from having to register their machine guns, even if these were obtained prior to 1986 and are now legally possessed under the grandparent clause. For these reasons, we conclude that the Government was not required to prove that Harvey acquired the M-16 parts after May 19, 1986.
 
 III.
 
 38
 Harvey contends that his conviction should be overturned because Seth Lukens committed perjury during his testimony as a Government witness. Harvey bases this contention on the alleged contradiction between Lukens' testimony that he had seen Exhibit 1 (the AR-15 seized from Harvey's residence) on numerous occasions in 1987, 1988 and 1989, and a pretrial statement given by Lukens in which he stated that he had never seen that weapon. Harvey also argues that the Government knowingly used Lukens' perjured testimony to obtain his conviction and failed to provide him with additional pretrial statements made by Lukens that would have assisted Harvey in his cross-examination. We reject Harvey's contention that Lukens' allegedly perjured testimony warrants a reversal of his conviction because there is no evidence in the record that the government knowingly used perjured testimony or withheld evidence.
 
 
 39
 Although Lukens' statements conflict, contradictory testimony by Lukens is not sufficient for Harvey to obtain a reversal of his conviction. United States v. Baker, 850 F.2d 1365, 1371 (9th Cir.1988). Instead, Harvey must demonstrate that the prosecution knowingly used perjured testimony and that there is a "reasonable likelihood that the false testimony could have affected the outcome of the trial." United States v. Polizzi, 801 F.2d 1543, 1549 (9th Cir.1986).
 
 
 40
 Harvey attempts to demonstrate that the Government knowingly used perjured testimony by alleging that government agents met secretly with Lukens to obtain additional information from him on two occasions subsequent to May 24, 1990. As proof of these meetings, Harvey points to the following testimony by Lukens on cross-examination:
 
 
 41
 Q. And you've discussed your testimony with the BATF [Bureau of Alcohol, Tobacco and Firearms] agents before you came in didn't you?
 
 
 42
 A. Yes, I did.
 
 
 43
 [RT 229.]
 
 
 44
 .............................................................
 
 
 45
 ...................
 
 
 46
 * * *
 
 
 47
 Q. Now have you had discussions with the Government about a Rule 35 motion?
 
 
 48
 A. Not in Montana.
 
 
 49
 Q. You have in Wyoming, haven't you?
 
 
 50
 A. Yes, I have.
 
 
 51
 Q. And it had to do with testimony in this particular case, didn't it?
 
 
 52
 A. To a minor extent.
 
 
 53
 RT 236.
 
 
 54
 These statements by Lukens are not sufficient to establish that the Government's discussion with him included the issue whether he had ever seen Exhibit 1 or that this discussion occurred after May 24, 1990. Most importantly, Lukens' statements do not show that the Government was aware his testimony at trial was false. Baker, 850 F.2d at 1371 ("[T]he record here at most shows only a prior inconsistent statement by [the witness]. When he called the prosecutor as a witness in the collateral proceeding, Baker failed to ask the state prosecutor any questions regarding the use of perjured testimony. We cannot presume that the prosecutor knew that the prior statement was true, but used it anyway.")
 
 
 55
 In the instant matter, Harvey made no motion for a new trial on the ground that Lukens' testimony was perjured. Harvey did not elicit testimony from any of the BATF agents or the Wyoming prosecutors pertaining to any interview with Lukens after May 24, 1990. Harvey has thus failed to create a record whereby this court can establish whether those meetings took place and whether they produced additional information that should have alerted the Government to any falsity in Lukens' statement.
 
 IV.
 
 56
 Harvey contends that the district court erred in failing to grant him a downward adjustment in his offense level pursuant to United States Sentencing Guideline (U.S.S.G.) § 2K2.1(b)(1), on the ground that he possessed the weapon solely for sport or recreational purposes. Harvey also argues that this court should review the district court's denial of a downward adjustment de novo, because the district court failed to make any findings of fact with regard to the applicability of section 2K2.1(b)(1).
 
 
 57
 We first note that the district court did not apply U.S.S.G. 2K2.1(b)(1), but rather applied the version of this guideline in effect before November 1, 1989, and previously labeled U.S.S.G. 2K2.2(b)(3). U.S.S.G.App.C at 82-84. Section 2K2.2(b)(3) established a base offense level of 12 and stated "[i]f the defendant obtained or possessed the firearm solely for sport, recreation or collection, decrease by 6 levels." Id. at 84.
 
 
 58
 We next conclude that the district court entered adequate findings of fact relevant to its denial of a downward adjustment under U.S.S.G. § 2K2.2(b)(3). Although a district court must "make clear on the record its resolution of all disputed matters, and [encourage] ... specific findings of fact," this requirement is satisfied when the district court adopts the findings contained in the presentence report. See United States v. Rigby, 896 F.2d 392, 394 (9th Cir.1990). In the instant matter, the district court expressly stated that it was adopting the conclusions of the presentence report:
 
 
 59
 I approve and adopt ... [the presentence report] recommendation and, therefore, I find and hold in accordance with Paragraph 13 that the base offense level under 2K2.2(a) is 12 in accordance with the guidelines which were in effect before November 1, '89.
 
 
 60
 Transcript of Sentencing, at 3. Thus, we review for clear error the district court's finding that Harvey did not possess the weapon solely for sport or recreation purposes. Uzelac, 921 F.2d at 206; 18 U.S.C. § 3742(e)(4) ("The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.").
 
 
 61
 Harvey presented some evidence that he used the weapon for sporting purposes. Joe Burchett testified, for example, that he fired an AR-15 with Harvey on numerous occasions, generally in the context of rabbit hunting. However, this evidence does not demonstrate that Harvey used the gun exclusively for sporting purposes. See United States v. Gavilan, No. 91-50509, 1992 U.S.App. LEXIS 13075, at (9th Cir. June 11, 1992) (where the record demonstrated that the defendant possessed a gun in part to protect his marijuana crop, "Section 2K2.1(b)(1) is inapplicable even if the firearm was also possessed for a separate purpose that may be lawful pursuant to Section 2K2.1(b)(1)."). Seth Lukens testified that Harvey carried the weapon back and forth between his home, his car and his place of business. Lukens also testified that he had sold methamphetamine obtained from Harvey for a period of four years. Harvey's involvement in drugs and his behavior in carrying the weapon back and forth between work, car and home is more consistent with the use of the weapon for personal protection than for hunting.
 
 
 62
 In light of this evidence, we hold that the district court's determination that Harvey did not possess the gun solely for sport or recreational purposes was not clear error.
 
 V.
 
 63
 Harvey contends that the warrant authorizing a search of his residence was not supported by probable cause, because the affiant, Special Agent William G. Mountsier of the Drug Enforcement Administration, deliberately (1) failed to advise the magistrate that the confidential informant had a lengthy criminal record and was a drug addict, (2) failed to inform the magistrate that a drug transaction which allegedly took place at Harvey's residence occurred five years prior in 1985, and (3) crafted the affidavit to make it seem as though he had received information from two separate informants, when he had only received information from one person. We review the issuance of a search warrant to determine "whether the magistrate had a substantial basis for concluding that the affidavit in support of the warrant established probable cause." United States v. Angulo-Lopez, 791 F.2d 1394, 1396 (9th Cir.1986). "This inquiry is less probing than de novo review and shows deference to the issuing magistrate's determination." Id.
 
 
 64
 We reject Harvey's argument that the search warrant was not supported by probable cause because Agent Mountsier's affidavit failed to inform the magistrate that the confidential informant had a history of criminal activity and drug abuse. We have never held that an affidavit offered in support of a search warrant must contain all known information pertaining to an informant's reliability. On the contrary, we have stated that "[i]f the informant has provided accurate information on past occasions, he may be presumed trustworthy on subsequent occasions." United States v. Angulo-Lopez, 791 F.2d 1394, 1397 (9th Cir.1986). Special Agent Mountsier's affidavit informed the magistrate that the informant "ha[d] provided accurate information to the affiant on at least 80 prior occasions." Harvey does not challenge this statement. Based on the number of times that the informant had provided Special Agent Mountsier with accurate information, we conclude that the affidavit adequately established the informant's reliability.
 
 
 65
 Harvey's other two arguments concerning lack of probable cause merit closer examination. Only two sentences in Special Agent Mountsier's affidavit relate to the presence of illegal drugs at Harvey's residence:
 
 
 66
 The C/I stated that he has also purchased methamphetamine from Harvey at his residence located at 3542 Howard Avenue, Billings, Montana, and that Harvey maintains his methamphetamine in the freezer compartment of his refrigerator located in the kitchen of his residence. Don Briner also purchased methamphetamine from Harvey at the Harvey residence but could provide no details of the transaction.
 
 
 67
 At a hearing conducted by the district court on Harvey's motion to suppress the AR-15 seized from his home, Special Agent Mountsier testified that the alleged purchase of methamphetamine occurred in 1985. He further stated that he had never spoken with Don Briner concerning any drug transaction at Harvey's residence, but had instead obtained this information from his confidential informant (subsequently revealed as Hal Turner).
 
 
 68
 If the magistrate were forced to rely solely on direct evidence of illegal drugs at Harvey's residence to support a search warrant, we might be required to find that the warrant was not based on probable cause. "Staleness must be evaluated in light of the particular facts of the case and the nature of the criminal activity and property sought." United States v. Greany, 929 F.2d 523, 525 (9th Cir.1991). Although we have allowed greater lapses of time where there is evidence of a continuing drug distribution operation, we have not yet upheld a lapse of five years between the occurrence of a drug transaction and its use in support of a search warrant. See id. (two years not too long where evidence sought was of marijuana growing activity); United States v. Hernandez-Escarsega, 886 F.2d 1560, 1566 (9th Cir.1989) (20 months not too long where affidavit indicated that the defendant was involved in an ongoing marijuana distribution ring). In addition, the affidavit mistakenly suggests that Special Agent Mountsier spoke with two informants concerning the sale of illegal drugs from Harvey's residence.
 
 
 69
 Despite these deficiencies in the portion of the affidavit directly related to Harvey's residence, however, we hold information contained in the affidavit suggesting that Harvey was involved in the sale of methamphetamine provided the necessary probable cause to support the search of his residence. We have previously stated that:
 
 
 70
 [d]irect evidence linking criminal objects to a particular site is not required for the issuance of a search warrant. A magistrate need only determine that a fair probability exists of finding evidence considering the type of crime, the nature of items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [contraband].
 
 
 71
 United States v. Jackson, 756 F.2d 703, 705 (9th Cir.1985) (citations omitted). In the case of suspected drug dealers, it is reasonable for a magistrate to infer that "evidence is likely to be found where the dealers live." Angulo-Lopez, 791 F.2d at 1399. Because the affidavit provided abundant unchallenged information regarding Harvey's sale of methamphetamine to the informant, we hold that the search of his residence was supported by probable cause.
 
 
 72
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3