**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jerry Lee IMES, Jr., Defendant– Appellant.**

No. 95–30025.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 1996.

Decided April 5, 1996.

---

Stephen R. Hormel, Federal Defenders of Eastern Washington and Idaho, Spokane, Washington, for defendant-appellant.

Gregory M. Shogren, Assistant United States Attorney, Yakima, Washington, for plaintiff-appellee.

Before: FLETCHER, JOHN T. NOONAN, Jr., and RYMER, Circuit Judges.

RYMER, Circuit Judge:

This appeal requires us to consider the impact of two recent Supreme Court opinions, *Staples v. United States,* —— U.S. ——, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), and *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), on the law of this circuit concerning possession of a sawed-off shotgun.

■ Jerry Lee Imes, Jr., argues that his conviction for possession of an unregistered firearm in violation of the National Firearms Act, 26 U.S.C. § 5861(d), cannot stand under *Staples* because the jury was not instructed that the government must prove his knowledge of the illegal features of the sawed-off shotgun he possessed. We conclude that a defendant is not entitled to such an instruction under *Staples* where, as here, the defendant knowingly possessed the firearm and the firearm is an obviously sawed-off shotgun. Because the characteristics of the weapon itself render it "quasi-suspect," *Staples* does not require proof that the defendant knew of the specific characteristics which make the weapon subject to the Act.

Imes also contends that the district court's imposition of a four-level enhancement at sentencing pursuant to U.S.S.G. § 2K2.1(b)(5) for "use[ ] or possess[ion][of] any firearm ... in connection with another felony" is infirm in light of *Bailey.* *Bailey* holds that a conviction under 18 U.S.C. § 924(c) for "use" of a firearm during and in relation to a drug crime cannot be sustained if the weapon was merely proximate and accessible, but instead requires evidence sufficient to show that the defendant actively employed the weapon in relation to the predicate offense. *Bailey,* —— U.S. at ——, 116 S.Ct. at 505. As the guidelines enhancement applies when the defendant has "possessed" (as well as "used") any firearm, we conclude that *Bailey* does not undermine our previous view that a firearm is within § 2K2.1(b)(5) when it had "some potential emboldening role in [the] defendant's felonious conduct." *United States v. Routon,* 25 F.3d 815, 819 (9th Cir.1994) (citations omitted). The standard adopted in *Routon* therefore continues to govern the "possess[ion] in connection with" prong of § 2K2.1(b)(5).

Since the evidence supports the judgment, and we have jurisdiction, 28 U.S.C. § 1291, we affirm.

## I

On June 27, 1994, a Yakima County Deputy Sheriff discovered a car parked in the middle of Cowichee Mill Road. The lights were on, the motor was running, and Jerry Lee Imes, Jr., was unconscious behind the wheel. Upon learning that the car and its license plates were stolen, the deputy arrested Imes. During his search of the car, the deputy found a baggie of methamphetamine on the driver's side floorboard and a loaded sawed-off shotgun on the front seat. The shotgun measured 25 1/4 inches.

Imes was charged with possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d), which provides that it is unlawful for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). A sawed-off shotgun is a "firearm" for the purposes of § 5861(d) if "as modified [it] has an overall length of less than 26 inches. . . ." 26 U.S.C. § 5845(a)(4). Imes admitted that he had possessed the sawed-off shotgun and that it was unregistered, but contended that he had not known that the sawed-off shotgun measured less than 26 inches.

Imes requested the following jury instruction:

Jerry Lee Imes has presented evidence that he did not know the firearm he possessed had an overall length less than that required by law. It is a defense to possession of an unregistered firearm that the person in possession did not know of the illegal characteristics of the firearm. The government must prove beyond a reasonable doubt that when Mr. Imes possessed the firearm, that he also knew about the characteristics of the firearm that made it illegal to possess. If the government failed to prove that he knew of the illegal characteristics of the firearm, then you must find Mr. Imes not guilty.

The court refused to give the proposed instruction, instead instructing the jury that:

[T]he government must prove each of the following elements beyond a reasonable doubt:

First, that on or about the date alleged in the indictment, the defendant possessed a weapon made from a shotgun that, as modified, had an overall length of less than 26 inches or a barrel length of less than 18 inches;

Second, that the defendant knowingly possessed the firearm; and

Third, that this firearm was not registered to the defendant in the National Firearms Registration and Transfer Record.

The court further instructed the jury that:

The only knowledge the government must prove is that the defendant knew he possessed a firearm. Knowledge that the firearm must be registered is not an element of the offense of possessing that firearm. It is no defense to Count 1 that the defendant did not know that the firearm must be registered, or that the defendant thought the firearm was a different length than it was.

The jury convicted Imes of possessing an unregistered firearm in violation of 26 U.S.C. § 5861(d). At sentencing, the district court imposed a four-level enhancement under U.S.S.G. § 2K2.1(b)(5) for use or possession of a firearm in connection with a felony. Imes timely appeals both the conviction and the sentence.

## II

Imes argues that under *Staples*, he was entitled to a jury instruction that the government has the burden of proving the defendant's knowledge of the illegal features of a sawed-off shotgun, namely, that it was less than 26 inches in length. For the same reason, he contends that the court should have instructed on his theory of defense and that the evidence was insufficient to prove the mens rea element of a § 5861(d) offense. The government counters that the very nature of a sawed-off shotgun puts a defendant on notice of the possibility of regulation, and that Imes's possession of an obviously sawed-off shotgun puts this case squarely within the general rule that we embraced in *United States v. O'Mara*, 963 F.2d 1288, 1291 (9th Cir.1992). It further submits that neither of

the exceptions we have previously recognized applies, *see United States v. Herbert*, 698 F.2d 981 (9th Cir.), *cert. denied*, 464 U.S. 821, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983) (no external indicia), *and United States v. Kindred*, 931 F.2d 609 (9th Cir.1991) (not obviously dangerous), and that we should join the Eighth Circuit in holding that *Staples* does not require the government to prove that a defendant had knowledge of the illegal features of a sawed-off shotgun, *see United States v. Barr*, 32 F.3d 1320 (8th Cir.1994).

We start with *O'Mara*, which reflects our law before *Staples*. It involved a machine gun built and designed to fire in either fully automatic or semiautomatic mode by manipulation of a visible, external selection switch. *O'Mara*, 963 F.2d at 1289. The defendant asked for an instruction similar to the one Imes requested here—an instruction that the government must prove he knew he possessed a dangerous device of the type that might be regulated. Affirming the district court's refusal to give such an instruction, we followed the then-accepted general rule that "where the government proves that a defendant is in possession of a gun requiring registration, it need not prove that the defendant knew of the specific properties of the weapon that subject it to registration." *O'Mara*, 963 F.2d at 1291.

As *O'Mara* noted, we had recognized two narrow exceptions to the general rule. "The first exception applies if there are *no external indicia* to indicate the likelihood of regulation." *United States v. Evans*, 978 F.2d 1112, 1114 (9th Cir.1992) (emphasis in original) (citation omitted), *cert. denied*, —— U.S. ——, 114 S.Ct. 78, 126 L.Ed.2d 46 (1993). For example, in *Herbert*, we held that the government was required to prove knowledge of the characteristics of the weapon that subjected it to regulation because the weapon—a semi-automatic firearm—had been internally modified into an automatic and thus did not appear to be what it actually was, a weapon subject to regulation. *Herbert*, 698 F.2d at 987. "The second exception arises where a firearm is inoperable and *obviously not dangerous*." *Evans*, 978 F.2d at 1114 (emphasis in original) (citation omitted). This exception is illustrated by *Kindred*, in which the defendant possessed an inoperable World War I vintage machine gun. *Kindred*, 931 F.2d at 612. In these circumstances the defendant is not alerted to the likelihood that the weapon is regulated, and is entitled to defend on the ground that he was mistaken about what the weapon really is.

There is little question that a sawed-off shotgun falls within *O'Mara*'s general rule and does not fit within either exception. A sawed-off shotgun's defining characteristic is obvious and there is no dispute about its dangerousness. *See, e.g., Herbert*, 698 F.2d at 986 (noting that a sawed-off shotgun "may be a dangerous device of such type as would alert one to the likelihood of regulation"); *United States v. Thomas*, 531 F.2d 419, 423 (9th Cir.) (Hufstedler, J., dissenting) (placing sawed-off shotguns in "the same category of suspected dangerousness as machine guns, hand grenades ... and other lethal hardware"), *cert. denied*, 425 U.S. 996, 96 S.Ct. 2210, 48 L.Ed.2d 821 (1976).

The question, therefore, is whether *Staples* requires a different result. We think not, although the issue is not without difficulty and the three circuits to consider it have split. *Compare Barr*, 32 F.3d at 1324 (concluding that *Staples* does not require the government to prove knowledge of incriminating characteristics of sawed-off shotguns), *with United States v. Mains*, 33 F.3d 1222, 1229 (10th Cir.1994) (concluding that *Staples* does apply to sawed-off shotguns), *and United States v. Starkes*, 32 F.3d 100, 101 (4th Cir.1994) (same).

In *Staples*, the Court addressed a situation nearly identical to the one in *Herbert*: The defendant possessed a rifle that had been manufactured as a semi-automatic weapon, then internally modified so that it functioned as an automatic weapon. *Staples*, —— U.S. at ——, 114 S.Ct. at 1796. Such weapons are "machine-guns" within the meaning of the National Firearms Act. The Court held that to obtain a conviction the government had to prove that the defendant knew of the features of his AR–15 that brought it within the scope of the Act. *Id.* at ——, 114 S. Ct. at 1804. However, the Court emphasized that its holding was a "narrow one," and that its reasoning "depends upon a common-sense

evaluation of the nature of the particular device or substance Congress has subjected to regulation and the expectations that individuals may legitimately have in dealing with the regulated items." *Id.*

As the Court explained, unlike the hand grenades at issue in *United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), where no mens rea test was imposed because it could be assumed that the defendant knew he was dealing with a particularly dangerous type of weapon (within the statutory definition of a "firearm") whose possession could not be an innocent act, it cannot be said that "all guns"—even though dangerous—necessarily alert individuals to the likelihood of regulation. Thus,

> despite their potential for harm, guns generally can be owned in perfect innocence. Of course, we might surely classify certain categories of guns—no doubt including the machine guns, *sawed-off shotguns,* and artillery pieces that Congress has subjected to regulation—as items the ownership of which would have the same quasi-suspect character we attributed to owning hand grenades in *Freed.* But precisely because guns falling *outside those categories* traditionally have been widely accepted as lawful possessions, their destructive potential, while perhaps even greater than that of some items we would classify along with narcotics and hand grenades, cannot be said to put gun owners sufficiently on notice of the likelihood of regulation to justify interpreting § 5861(d) as not requiring proof of knowledge of a weapon's characteristics.

*Staples,* —— U.S. at ——, 114 S.Ct. at 1800 (emphases added) (footnote omitted).

In light of this explanation, we think a "common-sense evaluation" shows that Imes's sawed-off shotgun is not a commonplace gun, is not generally available, is not a traditionally lawful weapon, and is within the category of guns that Congress has specifically regulated. The characteristic that triggers registration is externally visible. Like a hand grenade, and unlike an internally modified semi-automatic rifle, a sawed-off shotgun does not create a reasonable expectation that it is not subject to regulation; indeed, Imes

admits he knew he had a sawed-off shotgun and that the law provides that an unregistered sawed-off shotgun may be possessed only if it is at least 26 inches long. We therefore agree with the Eighth Circuit that

> [w]here, as here, the characteristics of the weapon itself render it "quasi-suspect," *Staples* does not require proof that the defendant knew of the specific characteristics which make the weapon subject to the Act. The Government need only prove that the defendant possessed the "quasi-suspect" weapon and observed its characteristics. A defendant who observes such a weapon cannot possess it with innocence.

*Barr,* 32 F.3d at 1324.

■ Accordingly, the district court did not err in refusing to instruct the jury that knowledge of the sawed-off shotgun's length was a required element of the government's case. Nor, for the same reason, did it err in failing to give Imes's theory of the defense instruction. *See United States v. Mason,* 902 F.2d 1434, 1438 (9th Cir.1990) (defendant entitled to theory of defense instruction only where supported by law). Finally, the evidence was not insufficient: Imes acknowledged that the weapon he possessed was a sawed-off shotgun, and there was evidence that it did measure less than 26 inches.

### III

Imes contends that the district court erred at sentencing in applying U.S.S.G. § 2K2.1(b)(5)—which calls for an increase in the offense level if the defendant "used or possessed" any firearm in connection with another felony—because the facts do not establish that Imes actively employed the sawed-off shotgun in connection with another felony. He argues that because we have analogized the application of § 2K2.1(b)(5) to the application of 18 U.S.C. § 924(c), *Routon,* 25 F.3d at 818, and the Supreme Court held in *Bailey* that a conviction under § 924(c) requires evidence sufficient to show an active employment of the firearm to constitute a "use," *Bailey,* —— U.S. at ——, 116 S.Ct. at 505, the district court's enhancement must be reversed.

Section 2K2.1(b)(5) of the Sentencing Guidelines provides for a four-level enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5). The Guidelines do not define what it means to possess or use a firearm "in connection with" another felony, but we held in *Routon* that § 924(c)[1] is an appropriate guide for interpreting § 2K2.1(b)(5). *Routon*, 25 F.3d at 818. The government had charged Routon with possession of a stolen motor vehicle and unlawful possession of a firearm. We concluded that, "to the extent that the government relies upon physical possession, it must show that the firearm was possessed in a manner that permits an inference that it facilitated or potentially facilitated—i.e., had some potential emboldening role in—a defendant's felonious conduct." *Id.* at 819.

Imes's argument turns on the fact that the district court found that he had "used" the weapon and *Bailey* holds that "use" for purposes of § 924(c) requires more than mere possession. *Bailey* clearly changes the standard in this circuit for determining whether the government has met its burden of proving that a firearm has been "used" in relation to another offense for purposes of § 924(c). *United States v. Hernandez*, 80 F.3d 1253, 1257 (9th Cir.1996). Whereas we had previously held that a mere showing of potential emboldenment sufficed, *see Routon*, 25 F.3d at 819, now "§ 924(c)(1) requires evidence sufficient to show an *active employment* of the firearm by the defendant." *Bailey*, —— U.S. at ——, 116 S.Ct. at 505 (emphasis in original). However, U.S.S.G. § 2K2.1(b)(5) applies when the defendant has "possessed," as well as when he has "used," the firearm in connection with the predicate offense. The question remains, therefore, whether the fact that the emboldenment test is no longer good law for § 924(c) purposes necessarily means

that this test has been overruled for § 2K2.1(b)(5) purposes as well.

We conclude that the emboldenment standard survives for the "possession" prong of § 2K2.1(b)(5). In *Bailey*, the Court was concerned that "[a]n evidentiary standard for finding 'use' that is satisfied in almost every case by evidence of mere possession does not adhere to the obvious congressional intent to require more than possession to trigger the statute's application." *Id.* at ——, 116 S.Ct. at 506. This concern is not implicated by applying the emboldenment test in the context of § 2K2.1(b)(5); unlike § 924(c), § 2K2.1(b)(5) applies not only where the defendant has "used" the firearm, but also where the defendant has "possessed" it. Just as the Court in *Bailey* was concerned with distinguishing "uses" from "carries" in § 924(c), we must credit the Commission's distinguishing "used" from "possessed" in § 2K2.1(b)(5). Accordingly, we conclude that *Bailey* leaves the standard we have previously adopted intact for purposes of the "possessed" prong in § 2K2.1(b)(5).

Applying this standard to the facts of this case, the district court did not err in imposing the four-level enhancement. Imes was in a stolen car containing methamphetamine. The sawed-off shotgun was loaded and located within easy reach. It was not clearly erroneous to infer that the sawed-off shotgun "had some potential emboldening role" in Imes's felonious conduct.

AFFIRMED.

NOONAN, Circuit Judge, dissenting:

The court candidly notes that "the issue is not without difficulty" and that both the Tenth Circuit and the Fourth Circuit have reached a conclusion opposite to that of the court. In the face of this division and difficulty it is not easy to see why the court prefers to eliminate proof of an element of knowledge that goes to the *mens rea* of the defendant.

---

1. Section 924(c) prohibits the "use[ ] [of] a firearm" "during and in relation to any crime of violence or drug trafficking crime ... for which

[the individual] may be prosecuted in a court of the United States...." 18 U.S.C. § 924(c)(1).

The court's principal reliance appears to be on an offhand reference to sawed-off shotguns in *Staples v. United States*, —— U.S. ——, ——, 114 S.Ct. 1793, 1800, 128 L.Ed.2d 608 (1994). This reference is hardly the kind of incidental illustration that should be dispositive when the issue is squarely presented. Our jurisprudence has traditionally demanded proof of a criminal intent to obtain a felony conviction. Our belief in individual responsibility requires such proof. Purely regulatory crimes should be the exception. *Morissette v. United States*, 342 U.S. 246, 250–62, 72 S.Ct. 240, 243, 96 L.Ed. 288 (1952). We succumb to a regulatory, bureaucratic mentality when we add one more regulatory crime to an increasing roster.