**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert W. EDWARDS, Defendant–Appellant.**

No. 95–3488.

United States Court of Appeals, Seventh Circuit.

Argued April 11, 1996.

Decided July 18, 1996.

Eric J. Klumb (argued), Office of U.S. Atty., Milwaukee, WI, for petitioner–appellee U.S.

David Ziemer (argued), Milwaukee, WI, for defendant–appellant Robert W. Edwards.

Before FLAUM, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

FLAUM, Circuit Judge.

Robert W. Edwards pled guilty to one count of possession of an unregistered sawed-off shotgun less than eighteen inches in length, in violation of 26 U.S.C. § 5861(d). He later moved to withdraw his guilty plea, claiming the government failed to offer proof at the rule 11 colloquy that Edwards knew of the characteristics of the shotgun that

brought it within the ambit of the statute. Edwards argued such knowledge was an element of the charged crime under the Supreme Court's recent decision in *Staples v. United States*, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). The district court denied Edward's motion. We reverse and remand.[1]

## I.

On April 24, 1995, the Green Bay, Wisconsin police were called to Edwards' house to investigate a domestic dispute. When the police arrived, they were told by his wife that Edwards was drunk, had been arguing with her son, and had made threats with a gun. She related that Edwards had gone into a bedroom and refused to come out and that he had a .22 caliber pistol and a rifle of some sort in the room with him.

The police attempted to talk with Edwards and repeatedly asked him to come out of the room; he repeatedly refused. Edwards was clearly despondent and he told the officers several times that he wanted to die. After a while, Edwards came partly out of the room with a sawed-off shotgun. He indicated that he wanted to die and he started to raise the gun, but then he threw it into the hallway and retreated into the room. Later the defendant came out and showed the police a .22 caliber pistol and then quickly returned to the room. The officers heard the pistol go off once before Edwards threw the gun and a clip into the hallway. Over two hours after the stand-off began, the officers finally forced Edwards out of the room using tear gas.

Edwards, who had previously been convicted of a felony, was arrested and charged in a two-count indictment with a violation of 18 U.S.C. § 922(g), which prohibits possession of a firearm by a felon, and with a violation of 26 U.S.C. § 5861(d), which prohibits the possession of an unregistered shotgun with a barrel less than 18 inches in length. On the day trial was to begin, Edwards decided to plead guilty. Edwards was allowed to choose the count he wanted to plead to and chose count II. Count I, the felon in possession charge, was dismissed. The government proceeded to present its offer of proof on count II, essentially recounting the chain of events recited above. In addition, the government stated that it would have introduced the sawed-off shotgun, which had a barrel of less than 18 inches, and a certificate of nonregistration, which would have demonstrated that the gun had not been registered to Edwards in the National Firearms Registration and Transfer Record.

The government did not offer any proof as to Edwards' knowledge of the characteristics of the shotgun, in particular the government did not argue that Edwards knew the barrel was less than 18 inches long. It is clear that the government did not believe it was an element of the charged crime, as it stated at the change of plea hearing:

> The elements of proof that the Government would have had to sustain beyond a reasonable doubt are as follows: First, the defendant possessed a firearm, namely a sawed off shotgun, with a barrel of less than 18 inches; and second, that the firearm was not registered to him in the National Firearms Registration and Transfer Record.

After hearing the government's offer of proof and discussing the plea with Edwards, the court accepted the plea as knowingly and voluntarily made.

After the change of plea hearing, but prior to sentencing, the government became aware of the Supreme Court's decision in *Staples v. United States*, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), and brought the decision to the attention of defense counsel. Based on *Staples,* Edwards moved to withdraw his plea, arguing that the plea was not intelligently made because Edwards was not informed that the government had to prove he knew of the characteristics of the shotgun that made it illegal. Edwards also pointed out that the government's offer of proof provided no basis for a finding that Edwards had such knowledge. The government conceded that Edwards' plea could not be considered intelligently made if *Staples* required knowledge of the particular characteristics of

---

**1.** Edwards also challenged the sentence imposed by the district court. Because we reverse Edward's conviction, however, we do not address the sentencing issue.

the weapon; however, it argued that *Staples* did not mandate such knowledge in the case of a sawed-off shotgun. The district court agreed and denied Edwards' motion to withdraw his plea. The court then proceeded to sentence Edwards to a prison term of 115 months.

## II.

Section 5861(d) of the National Firearms Act makes it unlawful for any person to receive or possess a "firearm," as that term is defined in the Act, that is not registered in the National Firearms Registration and Transfer Record. It has been recognized that the statutory definition of "firearm" is much narrower than the common definition of the term. Many weapons ordinarily thought of as firearms in the ordinary sense of the term are not included in the Act's definition of "firearm." *See United States v. Ross*, 917 F.2d 997, 999–1000 (7th Cir.1990); *United States v. Barr*, 32 F.3d 1320, 1323 n. 4 (8th Cir.1994). However, one firearm within the statutory definition is the one Edwards was charged with possessing—"a shotgun having a barrel or barrels of less than 18 inches in length." 26 U.S.C. § 5845.

## A.

In *Staples v. United States*, 511 U.S. 600, ——, 114 S.Ct. 1793, 1799, 128 L.Ed.2d 608 (1994), the Supreme Court confronted the issue of "whether the defendant must know of the particular characteristics that make his weapon a statutory firearm," in order to be convicted under § 5861(d). Specifically, the question in *Staples* was whether the government had to prove that the defendant knew the gun he possessed had automatic firing capability, which made it a "machine-gun" within the meaning of the firearms statute. The gun at issue was manufactured as a semi-automatic weapon (which is not a "firearm" within the scope of the Act), but was internally modified so that it functioned as an automatic weapon. *Id.* at ——, 114 S.Ct. at 1796. Staples claimed he was ignorant of the modification and of the automatic nature of the gun. He argued that this fact should have shielded him from liability, since he was unaware of the feature that brought

the gun within the scope of the statute. The district court and the Court of Appeals held that the government had to prove only that the defendant was aware that he possessed a firearm as that term is commonly used. In fact, the district court specifically instructed the jury that "[t]he government need not prove the defendant knows he's dealing with a weapon possessing every last characteristic [which subjects it] to the regulation." *Id.*

The Supreme Court reversed, holding that the government should have been required to prove that Staples knew of the features that brought the gun within the scope of the Act. *Id.* at ——, 114 S.Ct. at 1804. In so holding, the Court rejected the government's argument that all guns are dangerous devices that put gun owners on notice of possible regulation, and hence that as long as it was demonstrated that the defendant was aware he possessed a firearm in the general sense of the term, it was unnecessary to prove that the defendant knew of the particular characteristics of the gun that subjected it to regulation. The Court found that, given the "long tradition of widespread lawful gun ownership by private individuals in this country," and the fact that "guns in general are not deleterious devices or products or obnoxious waste materials," gun owners generally are not put "on notice that they stand 'in responsible relation to a public danger.' " *Id.* at ——, 114 S.Ct. at 1800 (internal citation omitted). The Court rebuffed the government's claim that "one would hardly be surprised to learn that owning a gun is not an innocent act," stating "[t]hat proposition is simply not supported by common experience." *Id.* The Court explained that, in some cases, even dangerous items can "be so commonplace and generally available that we would not consider them to alert individuals to the likelihood of strict regulation." *Id.* The Court found this to be true of guns in general.

In light of the commonplace, innocent ownership of many guns, the Court was unwilling to dispense with the *mens rea* requirement that the defendant know of the particular characteristics that subjected his weapon to regulation. The Court was clearly concerned that without such a knowledge element,

§ 5861(d) would criminalize a "broad range of apparently innocent conduct." *Id.* at ——, ——, 114 S.Ct. at 1799, 1802. In other words, the Court reasoned that unless the defendant knows of the particular offending characteristics of the gun, he may simply believe he possesses a commonplace, "innocent" firearm; and given the traditional and widespread ownership of such guns, he would not be on notice of possible regulation. This concern was aptly demonstrated by the facts in *Staples*, where there was no external indication of the automatic nature of gun:

> It is unthinkable to us that Congress intended to subject such law-abiding, well-intentioned citizens to a possible ten-year term of imprisonment if ... what they genuinely and reasonably believed was a conventional semiautomatic [weapon] turns out to have worn down into or been secretly modified to be a fully automatic weapon.

*Id.* at ——, 114 S.Ct. at 1802 (quoting *United States v. Anderson*, 885 F.2d 1248, 1254 (5th Cir.1989) (en banc)). The Court also considered the harsh ten year sentence as indicating that Congress did not intend to discard the *mens rea* element for § 5861(d) offenses. *Id.* at —— –——, 114 S.Ct. at 1802–04.

In reaching its decision, the *Staples* Court distinguished its previous holding in *United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), which involved a prosecution for an unregistered grenade under § 5861(d). In *Freed*, the defendant knew that the items he possessed were grenades, yet he claimed he was unaware the grenades were unregistered. *Id.* The Court concluded, noting "that one would hardly be surprised to learn that possession of hand grenades is not an innocent act," that the government need not prove that the defendant knew the grenades were unregistered. *Freed*, 401 U.S. at 609, 91 S.Ct. at 1118. In *Staples*, the Court quickly explained that *Freed*, which held only that

§ 5861(d) does not require proof of knowledge that a firearm is unregistered, "suggests no conclusion concerning whether § 5861(d) requires the defendant to know of the features that make his weapon a statutory 'firearm'; different elements of the same offense can require different mental states." 511 U.S. at ——, 114 S.Ct. at 1799. Thus *Freed* did not speak to the *mens rea* element at issue in *Staples*.[2]

Further, the *Staples* Court pointed out that any analysis applicable to hand grenades is not readily transferrable to guns because, unlike guns, there is no tradition of lawful grenade ownership. *Id.* Thus, although it could be argued that a defendant is on notice of strict regulation once he is aware that he possesses a grenade in the most general sense (the government conceded in *Freed* that it would have to prove knowledge that the object was a grenade), the Court in *Staples* clearly determined that the same is not true if his knowledge is limited to the fact that he possesses a gun or firearm in the general sense of the term. *Id.* at —— – ——, 114 S.Ct. at 1799–1800. According to *Staples*, in order for gun owners to be on notice of possible regulation, they need to be aware of the particular characteristics that bring their firearm within the statutory definition.[3] As the Supreme Court concluded: "our holding depends critically on our view that if Congress had intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons, and to subject them to lengthy prison terms, it would have spoken more clearly to that effect." *Id.* at ——, 114 S.Ct. at 1804.

### B.

Edwards seeks to apply the holding of *Staples* to his case. He argues that the district court should have granted his motion to withdraw his plea because he was not informed that the government had to prove

---

2. In fact, the *Staples* Court pointed out that *Freed* assumed knowledge of the "feature" that brought the weapon within the scope of the Act. *Freed* never claimed that he was unaware he possessed a dangerous hand grenade. Thus, the *Freed* analysis was predicated upon the very knowledge that was at issue in *Staples*. *See Staples*, 511 U.S. at ——, 114 S.Ct. at 1799.

3. Once knowledge of these particular characteristics is proven, the holding of *Freed* would suggest that strict liability kicks in with respect to registration.

that he knew the barrel of his shotgun was less than 18 inches and because the government offered no proof from which such a finding could be made. The district court found that *Staples* was inapplicable to sawed-off shotguns. Generally, we review a district court's decision to deny a defendant's request to withdraw his plea for abuse of discretion only. *United States v. Knorr*, 942 F.2d 1217, 1219 (7th Cir.1991). The government concedes, however, that if *Staples* requires proof of knowledge of the illegal features of sawed-off shotguns, then Edwards should have been permitted to withdraw his plea.

We begin by noting that the Circuits are split on whether the *mens rea* requirement set forth in *Staples* is applicable to sawed-off shotguns. *Compare United States v. Barr*, 32 F.3d 1320 (8th Cir.1994) (*Staples* inapplicable to sawed-off shotguns) *and United States v. Imes*, 80 F.3d 1309 (9th Cir.1996) (same) *with United States v. Starkes*, 32 F.3d 100 (4th Cir.1994) (applying *Staples* to sawed-off shotguns) *and United States v. Mains*, 33 F.3d 1222 (10th Cir.1994) (same). The courts applying *Staples* simply assumed, without much analysis, that the decision applied to all convictions under 5861(d), regardless of the nature of the weapon.

The courts that have held *Staples* inapplicable determined that the concerns underlying the decision were not present in the case of a sawed-off shotgun and therefore that a *mens rea* requirement should not be imposed. Both the *Imes* and *Barr* courts reasoned that because sawed-off shotguns are quasi-suspect in character, i.e., there is no long tradition of lawful ownership, and because the shortened length is immediately apparent and externally visible, no person could believe possession of such weapons was an innocent act. *Barr*, 32 F.3d at 1324; *Imes*, 80 F.3d at 1313. The *Imes* court concluded that "like a hand grenade, and unlike an internally modified semi-automatic rifle, a sawed-off shotgun does not create a reasonable expectation that it is not subject to regulation." 80 F.3d at 1313; *see also Barr*, 32 F.3d at 1324. Both circuits primarily base their analysis and conclusion on two passages from *Staples*. First, they cite the following words of the Court:

As suggested above, despite their potential for harm, guns generally can be owned in perfect innocence. *Of course, we might surely classify certain categories of guns—no doubt including the machine-guns, sawed-off shotguns, and artillery pieces that Congress has subjected to regulation—as items the ownership of which would have the same quasi-suspect character we attributed to owning hand grenades in Freed.* But precisely because guns falling outside those categories traditionally have been widely accepted as lawful possessions, their destructive potential, while perhaps even greater than that of some items we would classify along with narcotics and hand grenades, cannot be said to put gun owners sufficiently on notice of the likelihood of regulation to justify interpreting 5861(d) as not requiring proof of knowledge of a weapon's characteristics.

*Staples*, 511 U.S. at ——, 114 S.Ct. at 1800 (emphasis added). The second passage is drawn from the Court's conclusion:

We emphasize that our holding is a narrow one. As in our prior cases, our reasoning depends upon a common-sense evaluation of the nature of the particular device or substance Congress has subjected to regulation and the expectation that individuals may legitimately have in dealing with regulated items.

*Id.* at ——, 114 S.Ct. at 1804. The Eighth and Ninth Circuits conclude from these passages that "where [ ] the characteristics of the weapon itself render it 'quasi-suspect,' *Staples* does not require proof that the defendant knew of the specific characteristic which make the weapon subject to the Act." *Barr*, 32 F.3d at 1324; *Imes*, 80 F.3d at 1313 (quoting *Barr*).

We do not interpret the quoted passages to exclude sawed-off shotguns from the *mens rea* requirement announced in *Staples*, and thus we join those circuits that have found *Staples* applicable to such guns. Although the first passage from *Staples* is not a model of clarity, we find it consistent with our understanding of *Staples* and *Freed* set forth above. We do not view the passage as carving out some exception to the *mens rea* requirement for quasi-suspect guns, but on

the contrary, as explaining why knowledge must be proven even with respect to these suspect guns. We read the Court as saying that it is true that certain guns are undoubtedly suspect and not traditionally legal, such as the machineguns and sawed-off shotguns subject to regulation. However, because there are so many lawfully owned guns, owners of suspect guns (which can often be difficult to distinguish from nonregulated guns) have no expectation of regulation unless they know of the particular attribute of the gun that makes it suspect and brings it within the purview of the statute. In other words, the dangerous quality of guns generally is insufficient to put the machinegun or sawed-off shotgun owner who is ignorant of the features making his gun quasi-suspect on notice of regulation.[4]

The courts exempting sawed-off shotguns from the rule of *Staples* conclude that one possessing such a quasi-suspect gun has no reasonable expectation of non-regulation; yet the thrust of *Staples* is that this is only true if the person is aware of the suspect feature of the gun. We agree that a person who knows his shotgun is less than 18 inches long or that his gun fires automatically has no claim of innocent ownership, just as if he knew he possessed a hand grenade. Without proof of this particular knowledge, however, the defendant may only be aware that he owns a firearm in the general sense, which is precisely what the *Staples* Court held insufficient for a conviction under § 5861(d). Thus, we respectfully conclude that the holdings of the Eighth and Ninth Circuits are inconsistent with *Staples*.

Several other factors support our interpretation of *Staples* and the quoted passage. First, the fact that *Staples* itself involved a machinegun belies any attempt to read into the passage a general exemption to the *mens rea* requirement for such "quasi-suspect" guns, as does the fact that most of the guns regulated by the firearm statute could be considered "quasi-suspect" in nature.[5] Additionally, the *Staples* dissent clearly read the Court's holding as applicable to both machineguns and sawed-off shotguns. *Staples*, 511 U.S. at ——, ——, 114 S.Ct. at 1806, 1812 (Stevens, J., dissenting). Further, the Court's finding that the harsh ten year penalty suggests Congress did not intend to eliminate the *mens rea* requirement is applicable to all offenses under § 5861(d), regardless of the type of weapon. *Id.* at —— ——, 114 S.Ct. at 1802–04. Moreover, we are reluctant to interpret *Staples* in such a way as to reach the odd result that the elements of a § 5861(d) offense vary according to the type of firearm at issue.

What the *Imes* and *Barr* courts really seem to be advancing is not that the *Staples* knowledge element should be eliminated in some § 5861(d) cases, but rather that we can just assume as a matter of law that the knowledge requirement is met in the case of a sawed-off shotgun, because its length is immediately apparent and externally visible to anyone observing it. These courts apparently do not believe that anyone could genuinely or reasonably be uncertain or unaware of the suspect character of a sawed-off shotgun. Knowledge is a factual issue, however, which should be left for the jury to determine. The fact that the length may be obvious or apparent simply goes to the ease in which the government will be able to prove the requisite knowledge. No doubt it will be much easier for the government to prove the defendant's knowledge of the features war-

---

**4.** With respect to the second passage relied on by *Imes* and *Barr*, we do not believe the Court was attempting to limit its decision to certain types of guns, but rather we believe it wanted to emphasize that its construction of 5861(d) did not indicate how it would interpret a statute that regulated a completely different item.

**5.** The statutory definition of "firearm" includes, among other dangerous weapons: shotguns with a barrel length of less than 18 inches; modified shotguns with an overall length of less than 26 inches; rifles having a barrel length of less than 16 inches; modified rifles with an overall length

of less than 26 inches; machineguns; silencers; and any destructive device, which includes bombs, grenades, rockets, missiles, and mines. *See* 26 U.S.C. § 5845(a)-(f).

In her concurrence in *Staples*, Justice Ginsburg recognized the particularly dangerous character of the firearms subject to regulation, stating: "The Nation's legislators chose to place under a registration requirement only a very limited class of firearms, those they considered especially dangerous." *Staples*, 511 U.S. at ——, 114 S.Ct. at 1805.

ranting registration in the case of a 14–inch shotgun than in the case of a converted semiautomatic, but this does not mean the knowledge element need not be proved. The fact that a shotgun's length is obvious and apparent is simply a means of proving knowledge, not a substitute for such proof.

Further, we do not believe that knowledge should be assumed because we are not convinced that the sawed-off nature or illegal characteristic of a shotgun would be immediately apparent in every case. There may be situations where a person could honestly believe that their possession of the weapon was entirely innocent. For example, it is not hard to conceive of a person reasonably believing a 17.5 inch shotgun is over 18 inches and therefore perfectly legal. The government apparently recognizes that these situations may exist, as it complains that its burden of proof will be too difficult in the close case. We cannot muster much sympathy for the government. First, we suspect that the situations we described will occur only in rare cases, making the government's burden easily satisfied in most cases. As the *Staples* Court noted in response to a similar argument by the government: "In short, we are confident that when the defendant knows of the characteristics of his weapon that bring it within the scope of the Act, the Government will not face great difficulty in proving that knowledge." 511 U.S. at —— n. 11, 114 S.Ct. at 1802 n. 11. Second, although the government may face a tougher burden in the close cases, we believe this is exactly what the Supreme Court held Congress intended—because the close case is exactly when you run the highest risk of convicting someone "whose conduct would not even alert them to the probability of strict regulations...." *Id.* at ——, 114 S.Ct. at 1802.

### III.

In conclusion, we believe that the Supreme Court in *Staples* made clear that the government had to prove the defendant was aware of the of the features that brought his gun within the realm of regulation, even if the

gun is considered "quasi-suspect." In addition, this knowledge cannot be presumed as a matter of law in every sawed-off shotgun case. Edwards was not informed that the government had to prove that he knew his shotgun had a barrel of less than 18 inches, and there was no factual basis to support a finding of such knowledge. Therefore, Edwards should have been permitted to withdraw his plea. We REVERSE Edward's conviction and REMAND the case for trial.[6]

---

**6.** As discussed at oral argument, once Edward's plea is withdrawn on remand, the prosecutor will be free to go to trial on both Counts I and II, as Count I was dismissed only as part of the plea agreement.