**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Vance S. PATTERSON, Defendant–Appellant.**

**No. 96–1675.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 6, 1996.

Decided Oct. 1, 1996.

Robert Anderson (argued), Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Mark A. Eisenberg (argued), Madison, WI, for Defendant–Appellant.

Before CUMMINGS, BAUER and KANNE, Circuit Judges.

CUMMINGS, Circuit Judge.

Following his flight from trial and sentencing on Illinois drug and gun charges, a federal arrest warrant was issued against defendant Vance Patterson in 1994. In January 1995 the Federal Bureau of Investigation located Patterson at the Trails End Motel in Madison, Wisconsin, where he was residing under the name Chauncey Mason. Surveillance of the motel by FBI agents and other law enforcement officers had commenced on January 22, 1995.

At 1:30 p.m. the next day, the agents observed defendant in the motel parking lot walking from his Dodge Omni vehicle toward his motel room. The agents identified themselves to Patterson and took him into custody after telling him that he was being arrested on the unlawful flight warrant. The agents then brought defendant to a motel surveillance room which they had used as a base.

Within the next 30 minutes, Madison FBI agent Richard Schuhler requested defendant's permission to search his motel room

and car. Madison FBI agent William Steckel and agent Szatkowski of the Wisconsin Department of Justice, Division of Narcotics Enforcement (DNE), were also in the motel surveillance room with Patterson.

At this time, defendant was seated on one of the beds in the motel room while handcuffed behind his back. Schuhler advised defendant that he was named in the warrant and that the agents wanted to search his room and car. Two agents testified that Patterson responded in an affirmative but equivocal manner, something to the effect "I might as well," then said "yes" and nodded his head affirmatively when Schuhler asked for a more definitive response. Schuhler filled in the consent form and he, Steckel and Szatkowski signed as witnesses to defendant's oral consent. In accordance with the usual custom, he was not asked to sign the consent form because he was handcuffed.

Thereafter the agents searched Patterson's room and automobile and found a handgun and three pounds of marijuana in the trunk of the car and also found $33,000 in cash as well as drug paraphernalia in his motel room. After locating such evidence, special agent Greg Phillips of the DNE had contact with Patterson in the motel room. Phillips testified that when he asked Patterson if he would consent to a search by Phillips, Patterson indicated that he had already given consent and told Phillips to proceed.

After defendant was transported to jail he orally agreed that FBI agents could search his storage lockers. Subsequently he pled guilty to possession of marijuana with intent to distribute (Count I) and unlawful possession of a firearm by a fugitive (Count III). Count II charging the use or carrying of a firearm under 18 U.S.C. § 924(c)(1) * was dismissed in light of the Supreme Court's decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472.

### Defendant consented to search of motel room and vehicle

■ Defendant testified at the suppression hearing in the district court that he never gave consent to any of the agents at any time to search his car or motel room. Therefore, defendant submits that the search of his automobile and motel room violated the Fourth Amendment.

Defendant attacks the credibility of the testimony of the agents present in the motel room by pointing to the following "inconsistencies" in or "problems" with their testimony:

(a) The two FBI agents testified that Patterson gave an equivocal response to the first request to consent, while DNE agent Szatkowski testified that Patterson consented immediately.

(b) Steckel testified that as soon as Schuhler obtained the consent, Schuhler left the room. Defendant claims that this shows that Steckel did not sign the Consent to Search immediately after Patterson gave consent, as the agents had testified.

(c) The agents did not indicate the time they witnessed the consent being given on the Consent to Search or elsewhere.

(d) When Steckel was asked on the witness stand whether he had ever requested an individual to sign a consent form after oral consent had been previously given, he said he had not. Defendant claims that in *United States v. Nafzger,* 965 F.2d 213, 217 (7th Cir. 1992), Steckel asked the defendant to sign a consent form after agents had already illegally entered the area which they were seeking to search. Defendant appears to believe that this is somehow contradictory.

■ Whether Patterson consented to the search of his motel room and vehicle is a question of fact that we must uphold on appeal unless the district court's conclusion was clearly erroneous. *United States v. Price,* 54 F.3d 342, 345 (7th Cir.1995); *United States v. Cahill,* 920 F.2d 421, 426 (7th Cir.1990), certiorari denied, 500 U.S. 934, 111 S.Ct. 2058, 114 L.Ed.2d 463.

Four agents testified that defendant gave oral consent, and such consent was witnessed by three agents on the consent form. We

* This provision imposes an additional five years' imprisonment on a person using or carrying a firearm during or in relation to any crime of violence or drug trafficking.

find the "inconsistencies" that Patterson has emphasized to be minor and easily explainable. Such inconsistencies do not come even close to showing that the district court's conclusion was clearly erroneous. The district court has set forth a well reasoned opinion and order, 95–CR–0022–C (W.D.Wis. July 20, 1995), articulating its findings with respect to the consent issue. There was ample evidence in the record for the district court to find that Patterson consented to the search although his handcuffs prevented him from signing the consent form, and therefore we will not disturb the district court's determination.

**The agents did not exceed the scope of defendant's consent**

Even if we find the defendant consented to the search, he argues that the agents exceeded the scope of his consent to search and were not authorized to search containers or compartments in his motel room or automobile. If the appellant had intended to limit the scope of his consent in any manner, the burden was upon him to do so. See *United States v. Baker*, 78 F.3d 1241, 1245 (7th Cir.1996); *United States v. Maldonado*, 38 F.3d 936, 941 (7th Cir.1994), certiorari denied, —— U.S. ——, 116 S.Ct. 205, 133 L.Ed.2d 138. There is no evidence in the record to this effect. As a result, this argument is frivolous.

**Four-level enhancement under Guidelines was justified**

At defendant's sentencing, the district court applied a four-level enhancement under USSG § 2K2.1(b)(5), which provides:

> If the defendant used or *possessed* any firearm * * * in connection with another felony offense; or *possessed* * * * any firearm * * * with knowledge * * * or reason to believe that it would be used or *possessed* in connection with another felony offense, increase [the guideline] by four levels. (Emphasis supplied.)

Marijuana was found in the trunk of defendant's vehicle, and a loaded 9mm Ruger was also found in a duffel bag there. Although these two items were found close together, defendant contends that there was insufficient connection between the presence of the firearm and his drug activity. But because of the proximity of the gun and the drugs, it was appropriate for Judge Crabb to conclude that the gun was present to facilitate defendant's drug trafficking. This was not clear error, our standard of review where the trial court bases the application of a guideline on findings of fact. *United States v. Messino*, 55 F.3d 1241, 1247 (7th Cir.1995).

*Bailey v. United States*, —— U.S. at ——, 116 S.Ct. at 506, holds that a conviction under 18 U.S.C. § 924(c) requires evidence to show an active employment of a firearm, as opposed to mere possession, in order to constitute "use" under that provision. Consequently, the government dismissed the Section 924(c) charge in this case while contending that the circumstantial evidence was still probative for considering the "possession" of the firearm in connection with the drug-trafficking offense for enhancement under Section 2K2.1(b)(5) of the Sentencing Guidelines. In support of this proposition, the government relies on *United States v. Imes*, 80 F.3d 1309 (9th Cir.1996). There Imes was in a stolen car containing methamphetamine, and the sawed-off shotgun was loaded and located within his easy reach. The Ninth Circuit held that it was not clearly erroneous to find that the sawed-off shotgun had been "possessed" in connection with another felony for purposes of Section 2K2.1(b)(5). *Id.* at 1313–1314. However, the cited portion of the *Imes* opinion was later withdrawn because of a concession of the government. 91 F.3d 1210 (1996). Consequently, *Imes* no longer supports the government's argument.

The same question was revisited by the Ninth Circuit in *United States v. Polanco*, 93 F.3d 555 (9th Cir.1996), where Polanco's handgun was found in his car and was held to be in his constructive possession although he was not actually employing the handgun when the officers seized it and consequently Polanco did not "use" the handgun within the definition articulated by the Supreme Court in *Bailey*. Polanco's gun was loaded with ammunition and wedged between the driver's seat and the console of his car, and he had been observed selling marijuana not far from his car and occasionally returned to it during

the time he was selling the marijuana. The Ninth Circuit held that "the presence of the gun in Polanco's car potentially emboldened him to undertake his illicit drug sales, since it afforded him a ready means of compelling payment or of defending the cash and drugs stored in the car." 93 F.3d at 567. Therefore the court of appeals concluded that the government had adduced sufficient evidence to prove that Polanco "possessed" the handgun in connection with his felonious drug sales within the meaning of USSG § 2K2.1(b)(5).

In accord with *Polanco*, we conclude that Patterson possessed the firearm next to the marijuana in his car trunk with "reason to believe that it would be * * * possessed in connection with another felony offense" within the scope of Section 2K2.1(b)(5). The gun had been possessed in the past as to defendant's drug offenses, and it was obviously still being possessed for that purpose as could be inferred by its proximity to three pounds of marijuana. Consequently, Judge Crabb was justified in imposing a four-level enhancement under that Guideline.

Judgment and sentence affirmed.