In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1515

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DENNIS JAMISON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:09-CR-00054—**Robert L. Miller**, **Jr.**, *Judge.*

ARGUED DECEMBER 3, 2010—DECIDED MARCH 18, 2011

Before FLAUM, ROVNER, and EVANS, *Circuit Judges*.

FLAUM, *Circuit Judge*. Dennis Jamison ("Jamison") was convicted of possessing a sawed-off shotgun, in violation of 26 U.S.C. §§ 5861(d) and 5845(a). During his trial, the district court permitted the government to elicit testimony from Jamison's wife, Michaell Jamison ("Mrs. Jamison"), on cross-examination regarding Jamison's aggressiveness. Jamison appeals his conviction, arguing that the question and Mrs. Jamison's response

were irrelevant, unfairly prejudicial, unduly cumulative, and lacked foundation. The government claims that the evidence demonstrated Mrs. Jamison's bias and motive to lie. We affirm.

## I. Background

Jamison and his wife had a series of domestic disputes during the week of February 23, 2009. Jamison left their shared residence on February 23 to stay with his parents. He returned on February 24 to pick up clothes and other essentials, taking his double-barreled shotgun and a .22 caliber handgun, but leaving the sawed-off shotgun at issue in this case ("the shotgun"). Shortly after he left, Mrs. Jamison took the shotgun to the sheriff's department and turned it in, saying that it belonged to Jamison and that she did not want it in her home. Jamison came to the residence again on February 25 to pick up more of his things. Officer Travis Shively was called to the scene. Jamison concedes in briefing that Mrs. Jamison told Officer Shively that Jamison was there for the shotgun. At some point during Officer Shively's visit, Jamison indicated that the barrel may have been too short.

On March 10, 2009, Federal Agents with the ATF Project Disarm Task Force, James Dean Vance and Bayne Bennett, arrived at Jamison's parents' home, where Jamison was at the time, to interview him about the shotgun. During the interview, Jamison admitted that he purchased the shotgun eighteen or nineteen years prior from a private individual at a gun show in Indiana. A fair reading of the record indicates that he admitted

that he knew the shotgun was illegal when he purchased it because it was too short and also that he fired the shotgun at his parents' property.

Title 26, Section 5861(d) prohibits possessing an unregistered "firearm." "Firearm" includes "a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length." 26 U.S.C. § 5845(a). The firearm at issue was made from a shotgun. It is only 14 and 1/2 inches long and its barrel 8 and 1/16 inches long. Jamison never registered the shotgun.

Jamison was indicted on May 14, 2009, on one count of possessing an unregistered firearm, in violation of 26 U.S.C. §§ 5861(d) and 5845(a). He was also indicted for being an unlawful user of a controlled substance in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3), but this count was dismissed at the beginning of trial.

Jamison had a two-day jury trial. The government's case-in-chief included testimony from nine witnesses. Among them, Officer David Curtis testified about Mrs. Jamison's visit to the police station on February 24, 2009. The government introduced the shotgun into evidence through Officer Curtis. Jamison's parents testified about the occasion on which Jamison fired the shotgun at their home. Officer Shively discussed his February 25 visit to Jamison's residence. Finally, Agents Vance and Bennett testified about their March 10 interview with Jamison.

Jamison called Mrs. Jamison as his first witness. She testified that she turned the shotgun into police on Feb-

ruary 24. She also claimed, among other things, that she inherited the shotgun from her grandfather in the 1980s and that it belonged to her, not Jamison.

On cross-examination, the government established that the couple had been separated in February and March 2009, but that they had since reconciled and were living together at the time of the trial. Mrs. Jamison testified that she provided a sworn, taped statement to law enforcement officers on February 26, 2009. The government played portions of her statement at trial demonstrating that she told police that the shotgun belonged to Jamison. She also testified that she told law enforcement that Jamison owned the shotgun on March 10, 2009.

The government asked whether Mrs. Jamison had previously told the police that Jamison "raised his hand to you to intimidate you." She admitted making the statement and said that her husband was "an aggressive person," but claimed that Jamison had never actually raised his hand to her and that her contrary statement to police was a lie. The government then asked the question that lead to this appeal: "Could you tell us why you think that . . . Jamison is aggressive?" Jamison's counsel objected. The government argued, and the district court agreed, that the question was relevant to prove bias and a motive to lie. Mrs. Jamison answered by claiming that her belief was "just based on a knowledge of a person's character," not on any specific incidents.

Jamison was convicted and sentenced to thirty-six months of imprisonment and two years of supervised release. On appeal, he argues that the district court erred

in permitting the government to ask Mrs. Jamison about her opinion that Jamison was aggressive.

## II.  Analysis

### A.  Mrs. Jamison's Testimony

Jamison appeals the district court's decision to permit the government to cross-examine Mrs. Jamison about why she thought Jamison was aggressive. We conclude that the district court did not err.

The Federal Rules of Evidence provide that "[a]ll relevant evidence is admissible," and that "[e]vidence which is not relevant is not admissible." FED. R. EVID. 402. They define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Evidence revealing a witness's bias or motive to lie is relevant and generally admissible under Rule 402. *See, e.g., United States v. Abel*, 469 U.S. 45, 52 (1984) ("Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."); *United States v. Thompson*, 359 F.3d 470, 475-480 (7th Cir. 2004); *United States v. Manske*, 186 F.3d 770, 777 (7th Cir. 1999). We review a district court's decision to

admit evidence for abuse of discretion.[1] *United States v. Anifowoshe*, 307 F.3d 643, 649 (7th Cir. 2002).

The question at issue—regarding why Mrs. Jamison thought Jamison was aggressive—was probative of Mrs. Jamison's bias. The district court did not abuse its discretion in permitting it. *See Thompson*, 359 F.3d at 479 ("Questioning a witness' motives for testifying is precisely the type of inquiry permissible on cross-examination. The district court did not abuse its broad discretion in concluding that the evidence of threats and recent violence were probative of Shinnamon's credibility and bias. When admitted on cross-examination, this evidence of recent threats and violence was relevant and probative to demonstrate that Shinnamon, a witness who changed her pretrial testimony, was biased and therefore likely to slant or even fabricate her testimony in the defendant's favor.").

Jamison appeals under Rule 403, arguing that merely asking the question at issue prejudiced him. His argument lacks merit. Mrs. Jamison's testimony about whether she or Jamison owned the shotgun contradicted her pre-trial statements. The threat evidence was relevant to her credibility and offered a potential explanation for her inconsistent statements. *See id.* at 477-

---

[1] The government argues that we should review Jamison's Rule 403 argument for plain error because he failed to object on Rule 403 grounds at trial. Jamison claims that he did object on Rule 403 grounds at trial. Since Jamison's arguments fail under either standard, we decline to resolve the disagreement.

79. It may have prejudiced Jamison to some extent, but not *unfairly* so. *See* FED. R. EVID. 403; *Thompson*, 359 F.3d at 479 ("Evidence is unfairly prejudicial if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." (quoting *United States v. Peters*, 791 F.2d 1270, 1294 (7th Cir. 1986), *superseded by statute on other grounds as stated in United States v. Guerrero*, 894 F.2d 261, 267 (7th Cir. 1990)).

Jamison also argues that we should vacate his conviction based on our opinion in *Dudley v. Duckworth*, 854 F.2d 967 (7th Cir. 1988). In *Dudley*, we held that the government's elicitation of threat evidence from a witness on direct examination was so prejudicial that its admission violated the defendant's constitutional right to a fair trial. *Id.* at 972. We suggested that the government elicited the threat evidence as pretext, intending "more to prejudice the defendants . . . than to explain away any nervousness of the witness." *Id.* Jamison's argument is unpersuasive.

We find more similarities between this case and *Thompson*, in which we distinguished *Dudley*. 359 F.3d at 476 n.7, 477. In *Thompson*, the defendant's romantic partner made inconsistent statements—one in an initial meeting with police before trial, the other at trial—about the defendant's ownership of ammunition. *Id.* at 473-74. On cross-examination, the district court permitted the government to elicit testimony that the defendant threatened and physically abused the witness. *Id.* at 474. Moving for

a new trial, the defendant argued that the district court erred by permitting the threat evidence. *Id.* The district court denied the motion, finding the evidence probative of the witness's bias and credibility and that it potentially explained the witness's inconsistent statements. *Id.* at 474-75. We affirmed and held that the evidence was relevant to prove bias and a motive to lie, and that it was not unduly prejudicial. *Id.* at 477-80. In reaching our holding, we distinguished eliciting threat evidence on direct examination, as was done in *Dudley*, from eliciting it on cross-examination, which occurred in Jamison's trial:

> Evidence of threats on direct examination, admitted even though the witness shows no indication of intimidation, is not only of extremely weak probative value, but it also could constitute a prejudicial attack on the opposing party. Such evidence can be highly prejudicial.

> The situation is very different when the purpose of introducing evidence of a threat is to demonstrate bias on the cross-examination of a witness. In such a context, the probative value of such evidence is far more evident. For instance, evidence of bias, including evidence of a threat, to challenge the credibility of a witness who has made an inconsistent statement simply does not raise the same concerns as evidence of a threat offered, in the absence of a testimonial inconsistency, simply to "boost" a witness' testimony.

*Id.* at 476-77.

Similar to the witness in *Thompson*, Mrs. Jamison made contradictory statements—one before trial, the other during trial—regarding whether she or Jamison owned the gun. In light of *Thompson*, the district court did not abuse its discretion by permitting the government to ask Mrs. Jamison why she thought Jamison was aggressive. *See id.* at 475-80.

Next, Jamison argues that the threat evidence was unduly cumulative because the government previously established Mrs. Jamison's bias and motive to lie when it elicited testimony that she and Jamison were married and living together at the time of the trial. Jamison cites no relevant legal authority to support his argument. To the extent that he is relying on Rule 403, his argument is unpersuasive. As discussed above, the evidence was probative; it demonstrated that Mrs. Jamison may have been motivated to lie. *See Abel*, 469 U.S. at 52; *Thompson*, 359 F.3d at 478 n.13, 479. Jamison simply fails to demonstrate that the probative value of the evidence at issue was "substantially outweighed by the . . . needless presentation of cumulative evidence" and that the district court abused its discretion in permitting it. FED. R. EVID. 403.

Finally, Jamison argues that the government did not lay adequate foundation to ask Mrs. Jamison about her opinion that Jamison was aggressive because there was no evidence that he physically abused her during the week of February 23, 2009. We disagree. There was undoubtedly sufficient foundation: She voluntarily admitted that Jamison was "an aggressive person" in re-

sponse to an earlier question by the government, she acknowledged that she made a sworn statement to police that Jamison had raised his hand to her to intimidate her,[2] and she explained that she and Jamison had been married for fifteen years at the time of the trial and that they dated for over three years before marrying. *See* FED. R. EVID. 602, 701.

Further, we have "explained that there is no special foundational requirement for bias evidence and the party attempting to demonstrate bias should be able to prove any fact logically relevant to bias." *Thompson*, 359 F.3d at 478 n.12 (construing *Manske*, 186 F.3d at 779). A party eliciting bias evidence based on fear need not "ask explicitly whether the witness was 'presently afraid' or whether the witness felt 'pressured to testify a certain way.'" *Id.* (quoting *Manske*, 186 F.3d at 779). We have mentioned that defendants seeking to elicit such evidence must inquire into the "who, what, why, where, and when of the specific incidents he claims give rise to bias." *Id.* (quoting *Manske*, 186 F.3d at 779). But such questions were unnecessary in this situation. Here, the government asked merely why Mrs. Jamison thought Jamison was aggressive. It did not seek testimony about specific incidents and Mrs. Jamison did not

---

[2] She also testified that her statement to police was a lie and attempted to explain the discrepancy by claiming that she was off her medication for depression and anxiety when she spoke with police. But neither she nor Jamison established that failing to take her medicine indicated that her statement to police was false and her testimony true.

discuss any. In response, Mrs. Jamison explained that her belief was "based on a knowledge of a person's character" and that Jamison had not physically harmed her in any way. The district court did not err in permitting the government to elicit testimony regarding why Mrs. Jamison thought Jamison was aggressive.

## B.  Harmless Error

Assuming arguendo that the district court erred in its evidentiary ruling, the error was harmless. *See* FED. R. CRIM. P. 52(a); *United States v. Cooper*, 591 F.3d 582, 590 (7th Cir. 2010). To convict Jamison under 26 U.S.C. §§ 5861(d) and 5845(a), the government needed to prove three elements: (1) that Jamison "consciously possessed what he knew to be a firearm," *United States v. Sanders*, 520 F.3d 699, 700 (7th Cir. 2008) (quoting *United States v. Jones*, 222 F.3d 349, 352 (7th Cir. 2000)); (2) that he "was aware of the . . . features that brought his gun within the realm of regulation," *United States v. Edwards*, 90 F.3d 199, 205 (7th Cir. 1996); *see also United States v. Staples*, 511 U.S. 600, 618-19 (1994); *Sanders*, 520 F.3d at 700 ("[T]he government had to prove that Sanders . . . knew that the shotgun had an overall length of less than 26 inches or a barrel length of less than 18 inches."); *Jones*, 222 F.3d at 352; and (3) that the firearm was unregistered, although it was not required to prove that Jamison knew the firearm was unregistered, *see* 26 U.S.C. § 5861(d); *United States v. Freed*, 401 U.S. 601, 607-09 (1971) (holding that the government need not prove knowledge that a firearm is unregistered); *see also*

*Staples*, 511 U.S. at 609 ("In *Freed*, we decided only that § 5861(d) does not require proof of knowledge that a firearm is *unregistered*."); *Edwards*, 90 F.3d at 202 (discussing *Freed*).

The government indisputably established the first and third elements. Jamison concedes in briefing that the evidence established that he possessed the firearm. Also, undisputed evidence demonstrated that the shotgun was never registered.

Jamison argues that the government failed to sufficiently prove the second element to render the alleged error harmless. This argument is meritless: The government proved the second element with overwhelming evidence. First, Agents Vance and Bennett testified that Jamison admitted to them on March 10, 2009, that he knew the shotgun was illegal when he purchased it because it was too short. Second, Officer Shively and Mrs. Jamison testified that Jamison told Officer Shively on February 25 that the barrel might be too short. Finally, the shotgun and its barrel were significantly shorter than § 5845(a) permits: While § 5845(a) prohibits a shotgun from being shorter than 26 inches long and its barrel from being shorter than 18 inches long, the shotgun was merely 14 and 1/2 inches long and the barrel only 8 and 1/16 inches long. The fact that a shotgun or its barrel are obviously too short is "not a substitute" for proving that Jamison knew the shotgun had characteristics that subjected it to registration, *Edwards*, 90 F.3d at 205, but it is "a means of proving knowledge," *id.*, and we have explained that, coupled

with evidence that the defendant handled the gun, a shotgun or barrel that is obviously too short permits an inference that the defendant knew of its features that subjected it to the statute, *see Sanders*, 520 F.3d at 700-01 (finding that the jury could have inferred the requisite knowledge because there was evidence that the defendant possessed the firearm and the firearm's barrel was only 11 and 7/16 inches long, significantly shorter than the 18-inch minimum length).

Jamison makes two final arguments, both unpersuasive. First, he points out that he testified that some people told him that the gun was antique, and, thus, not illegal. But his admissions to Agent Vance, Agent Bennett, and Officer Shively, in addition to the fact that the shotgun and its barrel were significantly shorter than § 5485(a) permits, demonstrate that the jury would have convicted Jamison without the challenged evidence. He also claims that he never told law enforcement officers that he knew the shotgun needed to be registered. But a conviction requires proving that Jamison knew of the *characteristics* that subjected the firearm to the registration requirement—i.e., that the shotgun was shorter than 26 inches or that its barrel was shorter than 18 inches—not that he knew the firearm must actually be registered because of 26 U.S.C. §§ 5861(d) and 5845(a)—i.e., not that he had knowledge of the statute at issue or its specific prohibitions. *See Staples*, 511 U.S. at 619; *Sanders*, 520 F.3d at 700; *Jones*, 222 F.3d at 352; *Edwards*, 90 F.3d at 201-02, 204-05. Accordingly, even if the district court erred by admitting Mrs. Jamison's testimony, the error was harmless.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.