UNITED STATES of America,
Plaintiff–Appellee,

v.

Bernard BURNETTE, Defendant–
Appellant.

No. 03–2361.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 12, 2003.*

Decided Nov. 20, 2003.

James P. Hanlon, Office of the United States Attorney, Indianapolis, IN, for Plaintiff–Appellee.

James C. McKinley, Indiana Federal Community Defenders, Inc., Indianapolis, IN, for Defendant–Appellant.

Before: BAUER, MANION, and ROVNER Circuit Judges.

ORDER

Bernard Burnette pleaded guilty to possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). At sentencing the district court increased his offense level by 4 levels under U.S.S.G. § 2K2.1(b)(5), based on its finding that Burnette had possessed the firearm in connection with another felony–pointing a firearm at another person. See Ind.Code § 35–47–4–3(b).[1] Burnette argued to the district court, and maintains on appeal, that there was insufficient evidence to support the court's finding that he pointed a gun at anyone. The court sentenced Burnette to

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a)(2).

1. 35–47–4–3 Pointing a firearm at another person

. . . .

60 months' imprisonment and 3 years' supervised release. We affirm.

The district court applied the 4–level upward adjustment because of an incident that occurred on June 21, 2002. Amanda Swanson and Jaquita Lamar claim that on that evening Burnette pulled a gun on them and their companions, a group that included their children. Swanson testified at Burnette's sentencing hearing that as she was walking over a bridge that evening she heard a "click clack" sound that she assumed came from a gun. When she turned to look, she said, she saw Burnette about fifteen yards away holding something that could have been a gun, although she was uncertain and did not see him pointing anything towards them. Swanson stated that at the time Burnette was on one end of the bridge, her friends–including Lamar–were close to the middle, and she was almost to the other end. Lamar, on the other hand, testified that she saw Burnette load the gun and point it at the group. She also stated at first that she and her friends had already crossed the bridge when they saw Burnette but later in her testimony insisted that Burnette got as close as ten inches away from them when he loaded the gun and pointed it at them.

Lamar was partly contradicted by the testimony of defense investigator Jim Miller. Miller testified that Lamar had told him in an earlier interview that she was on the opposite end of the bridge from Burnette, not ten inches away, when she saw him point his gun. The bridge is apparently more than 60 feet long.

Some of Swanson's testimony was also inconsistent with an earlier interview. Police officer Damon King testified at sentencing that when he arrived on the scene Swanson told him that Burnette had approached her and her friends, chambered a round into the gun, and then pointed it at them. Swanson acknowledged that she had not reported to King what she herself had seen (or not seen) and explained that her earlier statements to police were based on what she had been told by one of her companions. The police, following up on Swanson's report, found Burnette later that evening in possession of a loaded handgun.

As a result of the 4–level adjustment, Burnette's imprisonment range increased from 37–46 months to 57–71 months.

Burnette insists that the only evidence supporting the adjustment is Lamar's testimony, which he characterizes as inherently inconsistent and insufficient. Burnette reasons that Lamar's testimony that he chambered a round and pointed his gun while standing less than a foot away from her is unreliable, not only because her statement was contradicted by other testimony, but also because–he says–it would have been nearly impossible for him to have loaded and pointed the gun with someone standing right in front of him.

Where an adjustment under § 2K2.1(b)(5) is based on findings of fact, the standard of review is clear error. *United States v. McGiffen*, 267 F.3d 581, 586–87 (7th Cir.2001); *United States v. Patterson*, 97 F.3d 192, 195 (7th Cir.1996). The government must prove the facts underlying an adjustment only by a preponderance of the evidence. *United States v. Brumfield*, 301 F.3d 724, 730 (7th Cir. 2002). On review, a witness's testimony will be deemed incredible as a matter of law only if it was impossible for the witness to have observed what she said she observed. *See United States v. McEntire*, 153 F.3d 424, 435 (7th Cir.1998). Impeachment by inconsistent prior state-

(b) A person who knowingly or intentionally points a firearm at another person commits a Class D felony.

ments does not render witness testimony legally incredible. *Id.*

The district court recognized that there were discrepancies in Lamar's testimony but ultimately found that the evidence supported a conclusion that Burnette had indeed pointed a loaded firearm at the group. In its finding the court highlighted "the testimony of Jaquita Lamar and her unequivocal testimony of the pointing of the firearm, the fact that the firearm was found loaded and chambered, and the testimony of Amanda Swanson about her hearing the sound that is distinctive and unique to the chambering of ammunition into a semi automatic weapon of that sort." The part of Lamar's testimony that was relied on by the court, that Burnette pointed a loaded gun at her, never varied. There is nothing impossible about the events as Lamar described them at the sentencing hearing. Accordingly, the district court's finding that Burnette pointed a loaded gun at a group of people is not clearly erroneous. AFFIRMED.